**UNITED STATES of America, Plaintiff,**

v.

**Aron Edward DONN, Defendant.**

**Nos. CV 80–2729–AAH, CR 78–1028–AAH.**

United States District Court, C.D. California.

Feb. 9, 1982.

See also, D.C., 584 F.Supp. 522.

John D. Robertson, Los Angeles, Cal., for plaintiff.

Michael S. Mink, Encino, Cal., for defendant.

HAUK, Chief Judge.

**ORDER FINDING DEFENDANT DONN IN CONTEMPT OF COURT AND COMMITMENT ORDER**

On the 25th day of January, 1982, the Court finds and holds Aron Edward Donn in contempt of Court; the defendant was present with appointed counsel, Michael S. Mink; the United States of America was represented by John D. Robertson, Assistant United States Attorney.

Despite warnings and admonitions of the Court, defendant Donn engaged in at least four loud and boisterous vocal outbursts defying the Court and interrupting the Court in rendering its Findings of Fact, Conclusions of Law and Order in the Evidentiary Hearing conducted pursuant to the Decision and Mandate of the Court of Appeals, Ninth Circuit, Case No. 80–5616, dated November 19, 1981, 661 F.2d 820 (9th Cir.1981). Since defendant Donn persisted in his contemptible conduct despite the warnings of the Court, and so misbehaved that in the presence of the Court he, Donn, outrageously obstructed the administration of justice, the Court finds said Donn in contempt of Court and he is ordered to be sentenced to a term of six months, all as appears conclusively in the transcript of Evidentiary Hearing, et al., January 25, 1982, which is hereby incorporated herein and made part hereof.

**EVIDENTIARY HEARING PURSUANT TO DECISION AND MANDATE OF COURT OF APPEALS, NINTH CIRCUIT, CASE NO. 80–5616, DATED NOVEMBER 19, 1981; FINDINGS OF FACT AND CONCLUSIONS OF LAW; ORDER THAT DEFENDANT RECEIVED EFFECTIVE AND MORE THAN ADEQUATE ASSISTANCE OF COUNSEL, AND THAT DISTRICT COURT JUDGMENT HEREIN OF JANUARY 15, 1979, VACATED BY SAID DECISION AND MANDATE OF COURT OF APPEALS, NINTH CIRCUIT, IS HEREBY REINSTATED IN TOTO BY REASON OF AFORESAID EVIDENTIARY HEARING, FINDINGS AND CONCLUSIONS**

**ORDER FINDING DEFENDANT DONN IN CONTEMPT OF COURT AND COMMITMENT ORDER**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**526**

I N D E X

| Proceedings | Page |
|---|---|
| Findings of the Court | 31 |
| | 50 |
| | 60 |
| | 61 |
| | 101 |

| WITNESSES | THE COURT | DIRECT | CROSS |
|---|---|---|---|
| NEWLANDER, Ira | 11 | | |
| | 20 | | |
| HANDZLIK, Jan L. | | | 36 |
| | | | 80 |
| DONN, Edward Aron | | 44 | |
| | | 91 | |
| HUTSON, William G. | 84 | | |

APPEARANCES:
 For the Plaintiff:
 JOHN ROBERTSON
 Assistant U.S. Attorney
 For the Defendant:
 MICHAEL S. MINK
 Also Present:
 ARON EDWARD DONN
 JAN L. HANDZLIK

LOS ANGELES, CALIFORNIA,
MONDAY, JANUARY 25,
1982; 10:00 A.M.

THE CLERK: No. 4 on the calendar, CR 78–1028, United States of America versus Aron Edward Donn. Appearances, counsel.

MR. ROBERTSON: Good morning, your Honor. John Robertson appearing on behalf of the government.

MR. MINK: Michael Mink appearing on behalf of the defendant.

THE COURT: All right. Here is another one up for filing and spreading, affirming the judgment but remanding it to va-cate the award of attorney's fees. I don't understand what they are doing up there, but I have to follow it. Wait a minute. Am I looking at the right one, No. 3?

MR. MINK: No. 4, your Honor.

THE COURT: Oh, sorry. I just did that, No. 3. I thought it was No. 2. All right. So it's No. 4. That's different. That's appearing for filing and spreading of the judgment, affirming the judgment in part, it says, and reversing and remanding in part.

Now, all I can do at this time, of course, is file and spread the judgment. Any objection?

MR. ROBERTSON: No objection.

MR. MINK: No objection, your Honor.

THE COURT: All right. Ordered filed and spread.

Now, what do we do about this hearing? I'm ready to proceed with the evidentiary hearing.

MR. ROBERTSON: Your Honor, before we proceed, I have a suggestion to make. In December, or as soon as I received notice of this judgment coming down from

the Ninth Circuit, what I had done at that time was I had written a memo to Ira Newlander, who I believe was the Court's court reporter at that time, and in that memo, I had asked Mr. Newlander to prepare a transcription of the guilty plea and of the sentencing of Mr. Donn, and that was for several reasons, among which were that I felt that were we in possession of that transcript, perhaps we would be able to tell whether or not certain defenses were in fact discussed with Mr. Donn and whether those defenses were put on the record at the time of the entry of the guilty plea.

THE COURT: Who have we got here for the defendant? Mr. Mink?

MR. MINK: Yes, your Honor.

THE COURT: Where is Mr. Handzlik?

MR. ROBERTSON: Mr. Handzlik is present in the courtroom.

MR. HANDZLIK: Here, your Honor.

THE COURT: You better step up, because it charges you with misconduct, as you know, or at least inappropriate action.

MR. HANDZLIK: Yes, your Honor.

THE COURT: And Mr. Mink was the one who filed the brief and so charged—

MR. ROBERTSON: I would like to continue just briefly, your Honor. I felt that the transcript—

THE COURT: —representing Mr. Donn on appeal.

MR. ROBERTSON: I felt that a transcription of the guilty plea would be able to shed light on whether or not those defenses were in fact discussed with Mr. Donn by Mr. Handzlik. Furthermore, I felt a transcription of the sentencing may in some manner shed some light on whether or not—

THE COURT: I don't know if that's necessary. We can take the evidence of Mr. Handzlik, what he did, what he didn't do, and the evidence that Mr. Donn wants to present or Mr. Mink wants to present for Mr. Donn. Mr. Mink, you are going to stay in as his attorney. No way can you get out. You are in.

MR. MINK: Yes, your Honor.

THE COURT: Then we will hear what Mr. Handzlik did. We will hear what Mr. Donn did. And those are the two main principals. What do we have to hear what I said or what anybody else said at the sentencing? The first question, as I see it, is whether or not Mr. Handzlik showed the defendant the presentence report. The second question is whether after seeing the presentence report, he had an opportunity—and we can get his testimony right here in court. He's here. I will just put him on the stand and get his testimony as to whether he saw it, what he objected to, and why didn't he speak up or why didn't Mr. Handzlik speak up, if he mentioned it to Mr. Handzlik. None of that will show in the transcription of the hearing. But why haven't you received the transcript by now? Is Mr. Newlander fooling around?

MR. ROBERTSON: I don't know, your Honor. My secretary is checking on that as of Friday. What may have happened is perhaps Mr. Newlander didn't get the communication or perhaps he's working on it now.

THE COURT: We can find out. I will order him into court. If he doesn't show, I will issue a bench warrant for his arrest. We will get him in. We are going to hold a hearing today. We are not going to fool around with this thing. I think the best thing to do is put it on for 1:30 this afternoon. In the meantime, you get ahold of Mr. Newlander and tell him I want him to come in and read that transcript. He doesn't have to prepare it. He can read his notes. And I want Mr. Handzlik here and I want Mr. Donn here and I want Mr. Mink here and I want you here and, also, the probation officer. I want you all here at 1:30.

Now, in the meantime, you call Newlander and tell him I want him here at 1:30. If you have any obstreperousness from him or refusal to do so or you can't reach him, let me know, because I will issue a bench warrant for his arrest, and you tell him so.

MR. ROBERTSON: Your Honor, I think maybe it's perhaps that he just didn't get the communication.

THE COURT: I don't care what it is. You tell him that if he isn't here at 1:30, a bench warrant for his arrest will be issued, and we will wait until they drag him in.

MR. ROBERTSON: Very well, your Honor.

THE COURT: I want him here to read it. He will read that, and then, Mr. Handzlik, I hope you are ready to testify as to your part in the thing and Mr. Donn is ready to testify as to his part, Mr. Mink.

MR. MINK: Yes, your Honor.

THE COURT: Because it's the only way to handle it. No sense fooling around. We have got Mr. Donn here. He's been brought some distance. I don't know from where, but he's been brought some distance.

MR. MINK: Terminal Island, your Honor.

THE COURT: From Terminal Island. All right. But no use in going through it twice. We will do it at 1:30. So ordered. And if you have any trouble—Well, we will do this. I will have my law clerk follow up on it. You follow up on it and call Mr. Newlander and tell him to be here at 1:30. So ordered. He's a former court reporter for the Court. Miss Reporter, you also call Mr. Newlander and tell him I am not kidding, that I want him here at 1:30. You know how to reach him.

THE COURT REPORTER: Yes.

THE COURT: That ought to be enough, but if it takes more, let me know forthwith, because I will issue a bench warrant and we will get it out right away.

(Recess.)

LOS ANGELES, CALIFORNIA,
MONDAY, JANUARY 25,
1982; 1:40 P.M.

THE COURT: Now we will take up this matter of U.S.A. versus Donn, No. 78–1028. Judge Curtis is going to use the courtroom to take a jury verdict, so when we hear from him, we will take a short recess so he can take the jury verdict.

Let the record show that Mr. Donn is present, Mr. Donn's attorney, Mr. Mink, is present, and Mr. Robertson, the Assistant U.S. Attorney is present, along with the probation officer, Mr. Hutson.

I have asked also Mr. Ira Newlander to come to court with his notes, because there has been no transcript prepared, apparently, of the time of sentencing in this case, which was on January 15, 1979.

MR. ROBERTSON: Your Honor, excuse me. There has been a transcript prepared of the sentencing, which apparently was transcribed this morning. There has not been prepared a transcription of the guilty plea; however, Mr. Newlander is here with his notes of the guilty plea.

THE COURT: That's what I wish him to read, read all of his notes, either that or, if you can, read a portion of them, then say that the transcription is the rest of what took place at the time of the sentencing on January 15, 1979. That will satisfy me.

MR. NEWLANDER: Your Honor, I have given copies of the transcript of the sentencing proceedings to all counsel.

THE COURT: And has counsel for the defendant showed it to the defendant?

MR. MINK: Yes, your Honor, I have.

THE COURT: Has he read it?

MR. MINK: I believe so.

Did you read it?

THE DEFENDANT: Yes.

THE COURT: Does he understand it?

THE DEFENDANT: Yes.

THE COURT: All right. Mr. Newlander, will you take the stand and be sworn, then we will see what you can add to the transcript.

IRA NEWLANDER,

called as a witness, having been duly sworn, was examined and testified as follows:

THE COURT: Before we start, Mr. Newlander, let the record show that this is the evidentiary hearing apparently—I say "apparently" because it's hard to tell what the Court of Appeals wants, but this is the

evidentiary hearing apparently ordered by the Court of Appeals in its decision dated November 19, 1981, wherein they affirm— what did they do, again? It's hard to tell. They say that the judgment is affirmed as to Donn's claims of false information in sentencing and inability to see the presentence report before sentencing, yet they say as to the claim of ineffective assistance of counsel—and counsel, Mr. Jan Handzlik, who was counsel at the time of the sentencing, is present; correct, sir?

MR. HANDZLIK: Yes, your Honor.

THE COURT: All right. You can come up to the bar of this court.

MR. HANDZLIK: This is fine here, if that's all right with the Court. I am comfortable here, if that's all right with the Court.

THE COURT: If you can hear everything.

MR. HANDZLIK: Yes.

THE COURT: As to the claim of ineffective assistance of counsel, the judgment is reversed. That was my judgment denying the 28 U.S.Code 2255 motion, and it was remanded for an evidentiary hearing. And if I read the whole opinion, it seems to say that although the conviction of Donn is affirmed, the claim of false information and inability to see the sentencing report, they claim—the decision seems to say I have got to conduct an evidentiary hearing that includes those two facets of alleged ineffective assistance of counsel, that is, failure of counsel to show the defendant the presentence report and have him read the presentence report and failure to advise him as to what items he could bring to the Court's attention that are misleading and let him rebut them. I don't know what else I can do. Has anybody got any other suggestion? I'm talking to counsel for the government or counsel for the defense, Mr. Mink.

MR. MINK: Your Honor, I have read the opinion many times. It's very confusing. But the way I understand it, basically what the Court has said with this decision—I think the Court said that the failure to

show a client a presentence report so he knows what it is, he can read it, understand it, and have an opportunity to rebut at the hearing any false information contained in the report, that that would constitute ineffective counsel. It then—

THE COURT: Yet they say it's affirmed on that basis.

MR. MINK: Well, I think they said—it's confusing, but I think they show it would be affirmed if he had shown it to his client. If he hasn't, then I think we go on. Your Honor, if I might say, part two of it is that if the—there is a double burden. The second half of it is to show that there was material false information contained in the report. We have to cover two aspects at this hearing. If the Court finds out that Mr. Donn had ineffective counsel because of failure to show him the presentence report and so forth, and if it contained false information, then the Court can determine whether or not this false information was such that it might have considered a lesser sentence.

THE COURT: Well, what I don't understand about it is this: The rule says you only have to show it to the defendant "or" his attorney. Note "or" his attorney. So I don't know where Choy, Kashiwa, and Norris get this business that it's got to be both the attorney and the defendant. It would seem to me they are fouling their nests up there. And I don't care if they know I said it or not. It's ridiculous. If you look at the rule, what does the rule say? Rule 16, isn't it? Or is it 32? Anybody know? Get me the Criminal Rules. Let's see.

MR. ROBERTSON: It's Rule 32, your Honor.

THE COURT: What does it say?

MR. ROBERTSON: Section (3)(A).

THE COURT: Rule 32(c): "Presentence investigation." Rule 32(c), subdivision (3)(A) says: "Before imposing sentence the court shall upon request permit the defendant, or his counsel if he is so represented, to read the report of the presentence investigation exclusive of any recommendation as to sentence, but not to the extent that in

the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons; and the court shall afford the defendant or his counsel—" note the disjunctive all the way through "—an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report."

Now, this opinion, as I read it—and it's something we are going to be discussing, I should add, down at the workshop down in San Diego starting tomorrow where we have a session pointing out ludicrous opinions of the Ninth Circuit or opinions from which no sense can be made, and this is one of them. I am going to do everything I can in my power to make sure that they know what I think of it. It's terrible. It doesn't make any sense, but we will follow it, until it's been reversed or overruled. I tried to get the U.S. Attorney to get an en banc hearing on it, but they didn't do it for some reason. I don't know why. But at any rate, as I see it, I think defense counsel is right. I have got to hold an evidentiary hearing to determine whether there was ineffective assistance of counsel, in that, number one, defense counsel at that time, Mr. Handzlik, didn't show the presentence report to the defendant. Now, why I have to do that when the rule doesn't provide for that—the rule just provides for the presentence report to go to either the defendant or his counsel, but they apparently don't read the English language the same way I do. When I see a disjunctive, it means "either/or." And once again, who was it? Choy, Kashiwa, and Norris. Secondly, it's got to include, as I see it, a determination of whether there is misleading information in the probation and sentencing report; and, thirdly, did the Court, if there be such misinformation, rely upon it in imposing the sentence? That is the hearing we are about to conduct.

Now, Mr. Newlander, will you please state your full name for the record. You have been sworn.

THE WITNESS: Ira Newlander.

THE COURT: And were you the reporter at the sentencing of the defendant here, Mr. Donn, on January 15, 1979?

THE WITNESS: Yes, your Honor, I was.

THE COURT: Now, have you had transcribed any portion or all of that hearing?

THE WITNESS: As to that hearing, I have a full and complete transcript before me.

THE COURT: That includes the colloquy between the Court and counsel and the defendant before sentencing as well as the sentencing?

THE WITNESS: Yes, your Honor.

THE COURT: What was it the U.S. Attorney said it didn't include?

MR. ROBERTSON: Your Honor, I don't recall—maybe I'm mistaken, but I don't recall telling the Court that it didn't include anything.

THE COURT: I thought you said it didn't include the sentencing.

MR. ROBERTSON: No, your Honor. This morning—strike that. A few minutes ago I told the Court that there was a transcription of the sentencing proceedings made this morning but that there was not a transcription of the guilty plea, but that Mr. Newlander was present and that he could read.

THE COURT: Oh, the guilty plea.

MR. ROBERTSON: That's correct.

THE COURT: Well, I don't know that this evidentiary hearing—they didn't say that I had to hold an evidentiary hearing as to whether he pled guilty.

MR. ROBERTSON: Your Honor, it did not go to the issue of whether or not Mr. Donn pled guilty, but the thought that I had on the matter as well as, I believe, Mr. Handzlik and other people was that perhaps a transcription of the guilty plea

would have shown whether or not at the time that Mr. Donn pled guilty there was any indication on the record either from Mr. Donn or perhaps from Mr. Handzlik at that time as corroboration as to whether or not in fact there had been any discussion of meritorious defenses, such as being under the influence. In the Court's recent interpretation of the opinion, what I had prepared to do was—in addition to the other things the Court brought up, I was prepared to discuss whether or not Mr. Handzlik had investigated with the defendant, Mr. Donn, whether or not he had a valid defense of being intoxicated at the time of the bank robbery. If the Court has determined that that is not really—

THE COURT: That's not raised in the opinion, is it, anywhere at all?

MR. ROBERTSON: It is raised in the opinion, your Honor.

THE COURT: Where? He was intoxicated when he pled guilty or he was intoxicated when he committed the offense?

MR. ROBERTSON: At the time of the offense, your Honor.

MR. MINK: Page 5718, the second paragraph in the right-hand column, there is some indication.

THE COURT: Well, then, I suppose if we are going to conduct a hearing, then it should cover more than just the two issues I mentioned. Yes. On page 5718 of the slip opinion, it says: "The alleged ineffective assistance of Donn's counsel consisted in not fully discussing the merits of Donn's case with him, not investigating the case, not informing Donn that intoxication might be a defense—" and then in a footnote they say Donn alleges that he was under the influence of alcohol and angel dust when he robbed the bank "—and not showing Donn a copy of the presentence report containing false information. These allegations are not clearly—" "—not clearly without merit." There is that double negative business that a lot of courts use when they can't figure out how to decide a case. "In particular, a defense counsel's failure to show his client the presentence report falls below the standard of reasonably competent representation," even though it abides by Rule 32(c)(3). "If the report contained materially false information that the trial court relied on in sentencing, the failure to show it to Donn clearly was prejudicial."

Now, maybe if the allegations of ineffective assistance of Donn's counsel include these things that the court says, and they say I should conduct an evidentiary hearing to determine the claim of ineffective assistance of counsel, I guess you are right, that we have to cover those things. So Mr. Newlander, do you have a copy of your notes with respect to the plea of guilty? And the date of the plea of guilty, as I recall it, was on December 19, 1978 at 2:30 p.m. There was a change of plea from not guilty to guilty, at which time I took the plea and I set the probation hearing and sentencing for Monday, January 15, 1979 at 2:00 p.m.

Do you have your stenographic notes for December 19, 1978 when the plea of guilty was taken?

THE WITNESS: I do, your Honor.

THE COURT: All right. We will cover that, and I will make my findings with respect to the allegations other than those connected with the presentence report. It appears to me there are two items up for discussion in this evidentiary hearing on ineffective assistance of counsel inasmuch as it relates to the presentence report: Number one, was it shown to the defendant? Number two, was there misleading information in it? Did the Court rely upon that? Well, perhaps three.

Now, let's take up the assistance of counsel at the time of the plea of guilty, since that is raised here in this opinion. Whether it's covered or not, I don't know, but let's cover it just in case. When it goes back, the court will know that we did cover it because we thought that they covered it.

Read your stenographic notes now of the plea of guilty on December 19, 1978.

THE WITNESS: (Reading:)

**532**

"The Court: All right, Mr. Donn. Will you approach the podium there with your counsel.

"Mr. Handzlik: We have provided a signed statement of rights.

"The Court: Yes. I see that. All right.

"Will you take the plea, Mr. Clerk.

"The Clerk: Is Aron Edward Donn your true name?

"The Defendant: Yes.

"The Clerk: How do you now plead to the indictment, guilty or not guilty?

"The Defendant: Guilty.

"The Court: All right. Mr. Donn, it is my duty to ask you a number of questions to determine if your guilty plea is your free and voluntary act. Would you please be sworn for this purpose."

And the defendant was thereupon duly sworn, your Honor.

THE COURT: All right.

THE WITNESS: (Continuing:)

"The Court: All right. Do you understand that at this time you have a constitutional right to be warned as follows: At all times—and this includes, of course, the time since your arrest on this charge to which you have pled guilty. You have had the rights as follows: You don't have to say anything. You can remain silent. Anything you say will be used against you. You are entitled to be represented by an attorney at all stages of the proceedings, including this one, and if you don't afford—or if you can't afford a lawyer, one will be appointed for you. Do you understand these rights?

"The Defendant: I do, your Honor.

"The Court: Mr. Handzlik has been appointed for you as your attorney. Is that correct?

"The Defendant: Yes, your Honor.

"The Court: And did you make any statements, admissions, or confessions without having been warned of these rights ahead of time?

"Mr. Handzlik: May I speak to the defendant, your Honor?

"The Court: Yes.

"The Defendant: Yes, your Honor.

"The Court: Did you make any statement or confession without having been warned of these rights before you made the confession or statement?

"The Defendant: No, your Honor.

"The Court: All right. Now, you have read the charge against you, have you not?

"The Defendant: Yes, your Honor.

"The Court: And you understand that this charge to which you are pleading guilty—to which you have pled guilty is that on or about October 11, 1978 in the Central District of California you, by force, violence, intimidation, knowingly took from victim teller Tommie Mae Gatlin $453 belonging to and in the care, control, custody, and management—" and I have the name of the bank, your Honor "—7060 Sepulveda Boulevard, Van Nuys, California."

THE COURT: Well, the name of the bank, let's get it in there so the record is clear. It's Bank of America at 7060 Sepulveda Boulevard, Van Nuys, California. Is that in your notes there?

THE WITNESS: Yes.

(Continuing:)

"Whose deposits were then and are insured by the Federal Deposit Insurance Corporation. Do you understand that?

"The Defendant: Yes, your Honor.

"The Court: And those are the—those are the ones to which you have pled guilty; right?

"The Defendant: Yes, your Honor.

"The Court: Now, has your attorney, Mr. Handzlik, done everything you could expect him to do in your behalf and in your defense?

"The Defendant: Yes, your Honor.

"The Court: Is there anything you are unhappy with or dissatisfied with that he has done in his advice to you?

"The Defendant: None, your Honor.

"The Court: All right. Do you understand that by pleading guilty you are giving up the right to a jury trial? We have already picked a jury, of course, in this case, but you are giving up that right, the right to a jury trial, and we will go ahead with your plea, and if I find it is freely and voluntarily made, we will set a date for consideration of the probation report and sentencing. But do you understand that by pleading guilty, you are giving up the right to a jury trial and the right to trial by Court without a jury, waiving the jury, and a finding of the Court of guilty or not guilty? And you are also giving up the right to cross-examine and confront witnesses against you and you are giving up the right to present evidence and witnesses in your own behalf and you are also giving up the right not to be compelled to incriminate yourself under the Fifth Amendment to the Constitution. Do you understand that?

"The Defendant: Yes, your Honor.

"The Court: All right. Do you know what the maximum—how old are you, by the way?

"The Defendant: 27.

"The Court: You are too old for the Youth Corrections Act.

"Do you know what the maximum punishment is that is provided by law?

"The Defendant: Yes.

"The Court: What is the maximum punishment?

"The Defendant: Yes.

"The Court: What is it, please.

"The Defendant: 20 years.

"The Court: Or?

"The Defendant: $5,000.

"The Court: Or both.

"The Defendant: Right.

"The Court: You understand that.

"The Defendant: Yes, sir.

"The Court: All right. Now, I have to determine if there is a factual basis for the plea. On that date that is charged in the indictment, were you in the bank?

"The Defendant: Yes, your Honor.

"The Court: And you went up to a victim teller, is that it—I take it.

"The Defendant: Yes, your Honor.

"The Court: And you went up to a victim teller, is that it—I take it.

"The Defendant: Yes, your Honor."

THE COURT: "Is that correct" I think.

THE WITNESS: (Continuing:)

"The Court: Did you have a gun?

"The Defendant: No.

"The Court: Did you give her a note? Or did you talk to her?

"The Defendant: It was a note, your Honor.

"The Court: What did the note say?

"The Defendant: Just scribbling on it. It was—

"The Court: Give me—

"Mr. Handzlik: Scribbling.

"The Defendant: There was no words indicated.

"Mr. Handzlik: He said 'scribbling.' He said just scribbling on it.

"The Court: Well, did it have something to the effect 'Give me your money'?

"The Defendant: It didn't have nothing but scribbling on it.

"The Court: Just scribbling. All right. But then after you handed it to her, did she turn over the money to you?

"The Defendant: Yes.

"The Court: And you took it out, didn't you, and used it for your own benefit?

"The Defendant: Yes, your Honor.

"The Court: You knew that was wrong and constituted a robbery of the bank? Is that correct?

"The Defendant: Yes, your Honor.

"The Court: All right. Thank you."

The U.S. Attorney said: "Your Honor, excuse me. May the Court inquire of the defendant what he said to the teller to obtain the money?

"The Court: He said he gave her a note."

The U.S. Attorney, Assistant U.S. Attorney: "He said there was scribbling on the

note. I think he made some verbal demand.

"The Court: What did you say to the teller?

"The Defendant: I showed her a note and just gave her a bag.

"The Court: Just what? Gave her a bag?

"The Defendant: I showed her a note and gave her a bag.

"The Court: All right. A bag. Did you tell her to put the money in it?

"The Defendant: Put the money in it, yes.

"The Court: All right. Thank you."

The U.S. Attorney said: "Thank you.

"The Court: Has any officer or agent of the government or anybody else used any violence, any force, violence, or coercion against you or any member of your family to get you to enter into a guilty plea?

"The Defendant: No, your Honor.

"The Court: Have there been any promises of reward, leniency, special sentence, lighter sentence, any particular sentence—

"The Defendant: No, your Honor.

"The Court: —or special treatment if you would plead guilty?

"The Defendant: No, your Honor.

"The Court: All right. Do you understand I am asking you all these questions not to pry into your private life or humiliate you in any way, but I just have to find out if your plea is free and voluntary. Do you understand that?

"The Defendant: Yes, your Honor.

"The Court: All right. Are you under a doctor's care today, suffering from any physical or mental illness affecting your ability to make decisions in the most important of your own affairs?

"The Defendant: No, your Honor.

"The Court: Have you taken any drugs, narcotics, stimulants, depressants, liquor, or marijuana of any kind in the last 24 hours?

"The Defendant: No, your Honor.

"The Court: Once again, I am asking you these questions to make sure your mind is clear and that you are pleading guilty freely and voluntarily and of your own accord. Is that true?

"The Defendant: Yes, your Honor.

"The Court: Does counsel represent he has conferred at length with the defendant, who is pleading guilty with his advice and consent and freely and voluntarily?

"Mr. Handzlik: Yes.

"The Court: And with a full understanding of the nature of the charges and consequences of the plea?

"Mr. Handzlik: Yes, your Honor.

"The Court: Or the possible consequences of the plea. All right. With those representations, the Court, having carefully questioned the defendant to determine if his guilty plea is freely and voluntarily made and having examined the defendant's demeanor and observed the defendant's demeanor, attitude, and intelligence while answering the questions, the Court finds the defendant is free of any coercive influence of any kind and that he is pleading guilty because he actually committed the offense charged and for no other reason, it is therefore ordered that the guilty plea is determined to be freely and voluntarily made with an understanding of the nature of the charges and consequences of the plea. The defendant is hereby convicted upon his plea of guilty. We will set a probation hearing and sentencing for about three weeks hence. Well, any time counts. Let's see. Today is the 19th. We will set it on the 15th.

"Mr. Handzlik: That's fine, your Honor."

There was some discussion of scheduling. Then the Court said: "Now, a couple of final things, Mr. Donn. You have signed a document here 'Statements made to the Court by defendant after a plea of guilty.' Is every answer true and correct to the best of your knowledge and belief?

"The Defendant: Yes, your Honor.

"The Court: All right. One final thing. I want to say this, Mr. Donn. Your de-

meanor and attitude while answering the questions has been, in my view, exemplary. I want to suggest to you that that's the way to be in court, to act in court, and I thank you for your courtesy to the Court in this connection. I just wanted to say it, because I just saw some activity that I didn't like before, but I think that the way you behaved yourself here is very impressive to the Court, so I urge you to get together with the probation officer and when you do, tell him all the good things about yourself and get letters, if you can, from any responsible people in the community, people in the community where you live or any friends or relatives. Get letters in your behalf, because I want to know all the good things about you, and so I can make an order now that the defendant is recommitted and that the Marshals will make him available down in the lockup, if you will, please, down there to the probation officer and get it started."

THE COURT: All right. Do we have a transcript that you have dictated and have transcribed, Mr. Newlander, of the probation hearing and sentencing?

THE WITNESS: I have it in front of me, your Honor, yes.

THE COURT: You have it. May I see it?

This is dated January 15, 1979, and I take it it's true and correct to the best of your knowledge and belief.

THE WITNESS: Yes, your Honor.

THE COURT: All right. Is there any further questioning desired. of the court reporter?

MR. ROBERTSON: None for the government, your Honor.

MR. MINK: No questions, your Honor.

THE COURT: Thank you, Mr. Reporter. All right. You are excused. Thank you for coming down. I appreciate it.

THE WITNESS: Glad to be of help, your Honor.

THE COURT: Thank you. That's the evidentiary hearing with respect to the time of plea of guilty.

Now, I find nothing whatsoever to indicate that the merits of the case were not fully discussed with the defendant before he pled guilty, that the case was not thoroughly investigated by Mr. Handzlik, his attorney, or anything at all indicating that the defendant did not discuss with his attorney possible pleas of not guilty based upon a defense of intoxication. Now, I think in order to complete that part of the case, that is, all of the efforts made by counsel prior to the plea of guilty should be examined at some length. Mr. Handzlik, will you take the stand, please, and be sworn. Let's hear what you have to say about it and then about the activities prior to the plea of guilty.

MR. HANDZLIK: Yes, your Honor.

THE COURT: Then we will allow the defendant, if he wishes to, to take the stand and tell what he says you did, then I will have to make a decision as to whether or not there was effective assistance of counsel up to and through the plea of guilty.

MR. HANDZLIK: Yes, your Honor.

THE COURT: All right. Would you please be sworn for this purpose.

JAN LAWRENCE HANDZLIK, called as a witness, being first duly sworn, was examined and testified as follows:

THE CLERK: Please be seated.

Would you please state your full name for the record and spell your last name.

THE WITNESS: Jan Lawrence Handzlik, H–a–n–d–z–l–i–k.

THE COURT: Let me ask you these questions, then counsel can examine you. Did you discuss with Mr. Donn the merits of his case before you advised him—or advised with him and he decided to plead guilty?

THE WITNESS: Yes, your Honor.

THE COURT: What did you do in that connection?

THE WITNESS: I reviewed the report prepared by the FBI in connection with the bank robbery that Mr. Donn was accused

of. I read those 302's by myself and then in conjunction with Mr. Donn, and we discussed any possible defenses that he might have.

THE COURT: Did he read those FBI reports?

THE WITNESS: He read some of them. In particular, he read the FBI 302 which contained his own confession.

THE COURT: I see. All right. And was he warned of his rights before the confession?

THE WITNESS: Yes, he was.

THE COURT: And he saw that?

THE WITNESS: Yes, your Honor. And we also have had a Jackson v. Denno hearing in this courtroom.

THE COURT: Yes. I remember that. And he admitted he signed the rights form—

THE WITNESS: Yes, your Honor.

THE COURT: —of the FBI. All right.

THE WITNESS: At that time, we discussed whether or not Mr. Donn could raise the defense of having been under the influence of either alcohol or some drug. It was indicated in Mr. Donn's confession and statement to the FBI that at the time of the robbery, Mr. Donn had taken some drugs and had some alcohol. I questioned Mr. Donn at that time about whether or not he could remember what took place on the day of the robbery, what led up to the robbery, what happened during the robbery, what happened after the robbery, even though he had apparently ingested some alcohol and some substance, some drug. He told me that he could remember what had happened during the robbery and the fact that he had taken drugs and perhaps alcohol did not have an effect upon him knowing or not knowing what he was doing at the time of the robbery. I recall pointing out to him that in his statement to the FBI, he gave a rather detailed description of what had taken place during the robbery at the same time that he had told the agents that he had had alcohol and drugs and he said—

THE COURT: Do you have a copy of that report?

THE WITNESS: I have a copy of the statement he made to the FBI, yes.

THE COURT: May we have it? We will mark it as an exhibit in this evidentiary hearing.

THE WITNESS: Yes, your Honor.

THE COURT: Unless we have another copy so that he doesn't have to tear up his file.

MR. ROBERTSON: Your Honor, I have a copy. I was going to give it to Mr. Mink.

THE COURT: Well, I'm sure that the defense has one, too.

Mr. Mink, you have seen it, haven't you?

MR. MINK: No, I haven't.

THE WITNESS: I will give the Court my copy.

THE COURT: All right. Let me have your copy, and you let the defense attorney have your copy, Mr. Robertson.

THE WITNESS: The statement of Mr. Donn is found at pages 20, 21, and 22 of the FBI report.

THE COURT: All right. Mark it as Exhibit 1, Mr. Clerk, Court's Exhibit 1 in connection with this hearing, this evidentiary hearing, in evidence at this evidentiary hearing. Any objections?

MR. ROBERTSON: No objection.

THE COURT: All right. Hearing none, in evidence. All right. Go ahead.

THE WITNESS: Beyond that, your Honor, I simply satisfied myself through discussions with Mr. Donn and through a reading of the FBI report that Mr. Donn was fully aware of what he was doing at the time of the robbery and that his voluntary intoxication, either on alcohol or drugs, would not form the basis of a valid defense to the charges. I also took into consideration the fact that bank robbery is not a specific intent crime and thus we did not have a situation where the voluntary intoxication would have served to rebut or somehow defeat the claim of specific intent, but nevertheless, it was my conclusion

at that time that Mr. Donn fully understood what he was doing at the time that he did it and that he intended to do what he did with regard to the bank robbery.

THE COURT: All right. Anything else that you want to tell us about your assistance as counsel up to and including the plea of guilty?

THE WITNESS: With regard to the plea of guilty, your Honor, there is really nothing further. I do feel that we discussed everything quite fully.

THE COURT: All right. Examination by the government.

MR. ROBERTSON: Your Honor, at this time I don't think there is anything I can add to Mr. Handzlik's statements.

THE COURT: All right. Examination by defense counsel.

MR. MINK: Yes, your Honor.

#### CROSS–EXAMINATION

BY MR. MINK:

Q. Mr. Handzlik, how many times did you meet with Mr. Donn?

THE COURT: Just one second. We better recess at this point for a few minutes while Judge Curtis takes a jury verdict. I will ask all the parties to remove your papers. I don't see any reason why you can't sit in the spectator section, if Judge Curtis will permit it, and then we will resume as soon as he has received a verdict and recessed his case.

MR. HANDZLIK: Your Honor, I have an appearance before Judge Takasugi at 3:30 concerning an arraignment and plea in a five-defendant case.

THE COURT: We will let you go to that. Why don't you go down there now. Maybe he can hear it now.

MR. HANDZLIK: I will try, your Honor.

THE COURT: Then come back.

(Short recess.)

THE COURT: Mr. Handzlik, will you resume the stand, please.

THE WITNESS: Yes, your Honor.

THE COURT: Examination by defense counsel in connection with the plea of guilty.

BY MR. MINK:

Q. Mr. Handzlik, how many times did you meet with Mr. Donn prior to entering his plea?

A. I would say—

Q. Excuse me. His plea of guilty. I understand there was an earlier plea of not guilty, was there not?

THE COURT: Well, the file shows that on December 19, 1978 it was called for a jury trial, so he must have pled not guilty.

THE WITNESS: It was on November 13, your Honor.

THE COURT: Yes, November 13. All right. I have the minutes here, and I set it for trial on December 19th, at which time he changed his plea to guilty. All right.

THE WITNESS: My records show that including December 19th, I had met with Mr. Donn on three occasions. The first was on November 13th, the date that I was appointed. I had a conference with Mr. Donn.

THE COURT: That's 1979?

THE WITNESS: 1978, your Honor. Excuse me.

THE COURT: '78. All right.

THE WITNESS: On December 7th, a conference with Mr. Donn. I may have had a conference with Mr. Donn on December 18th, and then I did meet with and discuss the case with Mr. Donn on December 19th, the date set for the beginning of trial or the date upon which Mr. Donn entered a plea of guilty.

BY MR. MINK:

Q. In the facts you previously testified to on direct, the matters which came to your knowledge, did they come to your knowledge between the time of the entry of the not guilty plea and the later withdrawal of that plea?

A. Yes.

Q. Yes? Did Mr. Donn tell you at any of those meetings that he was a drug addict?

A. No, he did not.

Q. He did not. He did inform you that he was "stoned," as he put it, at the time of the robbery?

A. To my recollection, Mr. Donn did not use the word "stoned"; however, in his statement to the FBI, I believe Mr. Donn had used the word "stoned." Mr. Donn did tell me that he was "high" or had taken something prior to the time that the robbery was committed.

Q. Did he state to you that he was under the influence of these drugs to the point that he didn't know what he was doing?

A. No, sir, he did not.

Q. Did you discuss with Mr. Donn at any of these meetings any possible defenses based on his condition at that time being under the effect of drugs or alcohol?

A. Yes, I did.

Q. And it was your conclusion that defense would be unsuccessful?

A. That was my conclusion. I also discussed that with Mr. Donn and told him that I thought it would be unsuccessful.

THE COURT: What did he say?

THE WITNESS: I don't recollect, sir.

THE COURT: Did he demur?

THE WITNESS: Yes.

THE COURT: Did he say he still wanted to plead not guilty or did he agree with you and say he did remember things and he wanted to plead guilty?

THE WITNESS: He told me that he remembered what happened during the robbery, before, during, and after the robbery, that he agreed with my assessment that he would not be found not guilty during the trial, and we discussed it to that extent, your Honor.

THE COURT: All right.

THE WITNESS: I don't recall specifically what he said, and that was my response to the question.

THE COURT: No. But just as best you recall what he said.

THE WITNESS: Yes, sir.

BY MR. MINK:

Q. Mr. Handzlik, did Mr. Donn make an independent determination to plead guilty? Was that his decision?

A. Yes.

Q. Did you advise him to plead guilty?

A. I advised him that the best thing to do in this case would be to enter a plea of guilty, yes.

Q. Did you pursue any independent investigation prior to your advising Mr. Donn to plead guilty?

A. My review of the FBI reports, the discovery material furnished to me, and my conversations with Mr. Donn constituted my independent investigation.

Q. Did you interview any of the witnesses to the crime?

A. No, I did not. I will say, though, sir, that none of the statements made by the witnesses to the FBI as found in the discovery material indicated to me that they observed that Mr. Donn was under the influence of drugs or alcohol.

THE COURT: You say none of them did?

THE WITNESS: To my recollection, none of the witnesses in the bank said anything that would indicate that Mr. Donn was under the influence of anything.

THE COURT: All right.

BY MR. MINK:

Q. Did any of the reports contain any statements regarding the teller at the Bank of America believing that Mr. Donn was under the influence of any drugs or alcohol?

A. My recollection is now that there were no such statements.

Q. The FBI report indicates that Mr. Donn stated that he was—I think the word is "stoned." Did you discuss with Mr. Donn whether or not he was stoned after you had reviewed that report?

A. I discussed what he meant by it and in what condition he was at that time.

Q. What did he say he meant by the word "stoned"?

A. He said that he had taken a drug. I don't recall what—as I sit here now, I can't recall what drug, if any, he told me that he took, but he did say that he had taken some drugs and that he was either "high" on them or feeling their effects to some extent.

Q. Did you review with Mr. Donn the contents of the FBI report and the other matters which you reviewed?

A. Yes.

Q. Did he read them? Did you present them to him to read them?

A. I gave Mr. Donn the opportunity to read them. I can't recall today whether or not he actually read each one of the 302 reports.

Q. In connection with advising him to plead guilty, did you discuss with him the contents of each of these reports, the ones you referred to in your direct examination?

A. Well, sir, I cannot say and I don't recall discussing with him the statements made by each and every witness to the bank robbery. We certainly discussed them in a general sense, such as so-and-so is going to say the following and this is the evidence the government has and a recitation of that evidence, but I can't say that I discussed each specific statement with Mr. Donn. I don't recall that.

Q. Is it your testimony that Mr. Donn was aware of the possibility of a defense based upon his physical condition?

A. Yes.

Q. And it was his choice after discussing it with you to waive that defense and to plead guilty?

A. Yes.

MR. MINK: I have no further questions.

THE COURT: All right. That will end the hearing on the questions raised at the time of the guilty plea.

MR. MINK: Your Honor, Mr. Donn would like to testify in regard to—

THE COURT: Unless you want to have him testify.

MR. MINK: Your Honor, I could as to part two do it at the same time if the Court wants to put him on now, and then again later.

THE COURT: Let's do them separately, because they are two separate things, and I can't figure out from this Court of Appeals whether the hearing we have now in connection with the plea of guilty is what they have in mind by "ineffective assistance of counsel," so you better put on any evidence anybody has on either side on this issue, what I will call the first evidentiary hearing.

MR. MINK: Thank you, your Honor.

THE COURT: All right. Step forward and be sworn.

ARON EDWARD DONN,

called as a witness on behalf of the defense, having been first duly sworn, was examined and testified as follows:

THE CLERK: Please state your name for the record and spell your last name for the record.

THE WITNESS: Aron Edward Donn, D-o-n-n.

DIRECT EXAMINATION

BY MR. MINK:

Q. Mr. Donn, I am going to ask you some questions regarding your relations with your counsel up to the time that you pled guilty. We will get to the other issue of the presentence report later.

Now, you heard counsel's testimony just now and a few minutes before. Is his testimony correct? Is what he said true?

MR. ROBERTSON: Objection, your Honor. The question is ambiguous. There is quite a bit of testimony there.

THE COURT: Overruled. Is the testimony correct? Answer yes or no.

THE WITNESS: Partially.

THE COURT: All right. What part isn't?

THE WITNESS: Well, upon seeing me the first time, Mr. Handzlik asked me a few questions. He asked me how was I doing, did I need any change to make a phone call and how do I plead. I told him I'd like to plead not guilty. He told me after him reading the report from the FBI agent that he felt that I had no type of defense whatsoever, and then this is why I pled not guilty and later on when I chose to—

THE COURT: He showed you the confession you made, didn't he?

THE WITNESS: Yeah. Well, I made a confession, yeah. True. But yet still at the same time I told him at the time that I was under the influence of PCP and alcohol when I committed the crime.

THE COURT: And he showed you all these witness statements of the FBI, all these reports, and told you in brief what they said, that the witnesses would say you weren't under the influence of anything and that you came in and held up the bank. Didn't he tell you that?

THE WITNESS: No, he didn't tell me that.

THE COURT: He showed them to you, didn't he?

THE WITNESS: He gave me a—

THE COURT: A bunch of papers.

THE WITNESS: He gave me a bunch of papers and that was—

THE COURT: From the FBI.

THE WITNESS: And took them right back from me. I didn't get to read the material. I just scanned through it.

THE COURT: Why didn't you read it?

THE WITNESS: Because he took them back from me.

THE COURT: All right.

BY MR. MINK:

Q. How much time did counsel spend with you?

A. Around four to five minutes.

Q. How many occasions did you meet with him?

A. Twice at L.A. County Jail and once when I was going to court here on the 19th when I pled—when I retook my not guilty plea back and became—and said I was guilty and changed it to guilty.

THE COURT: Why did you answer my questions at the guilty plea the way you did? You admitted everything. What's the matter with you? You weren't under the influence of any drugs at that time, were you? At least you swore to me that you weren't, didn't you?

THE WITNESS: (No audible response.)

THE COURT: Speak up.

THE WITNESS: I'm talking about when I committed—

THE COURT: Didn't you swear to me that you were not under the influence of any drugs or narcotics—

THE WITNESS: Within 24—

THE COURT: —or liquor or marijuana of any kind?

THE WITNESS: Within 24 hours.

THE COURT: That's right. And your mind was clear.

THE WITNESS: Yes. But at the time of the crime, I was under the influence of PCP.

THE COURT: You swore to me your mind was clear; right? And then you gave me the details of how you committed the offense. Remember that? Just as it was read—

THE WITNESS: Yes.

THE COURT: —by the reporter.

THE WITNESS: Yes.

THE COURT: All right. Go ahead.

MR. MINK: Thank you, your Honor.

Q. Mr. Donn, prior to pleading guilty, did you discuss your plea with counsel?

A. Yes, I discussed it with him.

Q. Did you tell him that you were under the influence of PCP or alcohol at the time of the robbery?

A. Yes, I did.

Q. Did he discuss with you any possible defense which might be raised based on those facts?

A. No.

Q. Did you have an opportunity to read the FBI report and the other reports?

A. I never knew nothing, that a presentence report existed.

THE COURT: No. He didn't ask you that.

THE WITNESS: No. I never read the—

THE COURT: The FBI reports.

THE WITNESS: All right. The FBI reports?

BY MR. MINK:

Q. Yes.

A. Can you rephrase the question? Can you say it again?

Q. I was just wondering if counsel gave you an opportunity to read the FBI report prior to your plea.

A. Briefly.

Q. Briefly. Did you tell the FBI that you were stoned at the time of the robbery?

A. Yes, I did.

Q. Did you tell your counsel that?

A. Yes, I did.

Q. Was it based upon his advice that you pled guilty?

A. Yes.

Q. Were there any discussions at all regarding the defenses which you might have to this case?

A. No. There was never no discussion.

Q. No discussion at all as to any possible—

A. He just told me if I was found guilty, I could be given a limit of 20 years and he says he had no defense, the fact that—you know, to the fact—the charge that I was being held against, and he said it would be best to my interest if I threw myself upon the mercy of the Court and pled guilty by taking my not guilty verdict back when I had picked a jury, but when the jury went in, he told me I think it would be best if you were to change your plea to guilty, because if you are found guilty, you can be given 20 years, and that scared me. He said he had no defense for me, so I took my not guilty plea back and pled guilty and did as he said because—

THE COURT: You said that before. Let's get on to something else.

BY MR. MINK:

Q. Were you in fact under the influence of drugs at the time of the robbery?

A. Yes.

THE COURT: That's been asked and answered. Objection sustained. Let's get on with it.

MR. MINK: I have no further questions, your Honor.

THE COURT: All right. Nothing further from the government.

MR. ROBERTSON: Your Honor, I have a couple of questions.

THE COURT: What do you want to do?

MR. ROBERTSON: I have nothing, your Honor.

THE COURT: Step down.

The Court finds that the attorney, Mr. Handzlik, exercised very, very diligent effort on behalf of this defendant both before and during the time that he pled guilty, both by the investigation, by the research done on the FBI reports and on the man's confession to the FBI and by his discussion with the man and presenting the reports of the witnesses to the man even though he says "briefly." I prefer to believe Mr. Handzlik. I think the defendant is a liar and a perjurer.

All right. We will take up the next hearing. This is the hearing on sentencing day. I have got a copy of the sentencing memorandum. I don't know whether that was ever taken before the Court of Appeals. Was it?

MR. MINK: This transcript, your Honor?

THE COURT: That's right.

MR. MINK: No, your Honor. It wasn't prepared until this morning.

THE COURT: So the Court of Appeals didn't even know what happened at the time of sentencing. Talk about a booby decision, this is it. I can't understand that the court would talk about the failure to give effective assistance of counsel without at least a copy of the sentencing report and a copy of the transcript of the hearing at the guilty plea. I just don't understand it. And I'll tell Norris that and I'll tell Choy that, too. They may be senior in some respects to me, but I'm senior to them in others. Neither one of them ever tried a case. They don't know what they are talking about.

All right. Let's get on with this.

### JAN LAWRENCE HANDZLIK,

recalled as a witness, having been previously duly sworn, resumed the stand and testified further as follows:

THE COURT: This is the hearing on the question of whether or not you properly represented the defendant at the time of sentencing. Now, let me ask you this, Mr. Handzlik: Have you read this transcript?

THE WITNESS: Yes, your Honor.

THE COURT: Is it true and correct—

THE WITNESS: To the best of my knowledge.

THE COURT: —with respect to the sentencing?

THE WITNESS: Yes, sir.

THE COURT: All right. Was the testimony of the reporter with respect to the questions asked of the defendant at the time of the plea of guilty true and correct?

THE WITNESS: Yes, sir.

THE COURT: All right. Do you want to add anything to your efforts with respect to the defendant at the time of sentencing?

THE WITNESS: Your Honor, if I understand what the Ninth Circuit said in their opinion, they stated that it was ineffective assistance of counsel to not have shown a copy of the presentence report to the defendant.

THE COURT: That's one point they raise, right. The second point they raise is that if there was misleading information in it, was he allowed an opportunity of rebuttal. All right. Go ahead.

THE WITNESS: With regard to the first point, on the day of sentencing, I reviewed the presentence report in the Probation Office, as we must do, because we are not permitted to remove the presentence reports from the Probation Office. I made notes in the Probation Office.

THE COURT: You are given a copy of the probation report here if you want it.

THE WITNESS: Yes, your Honor. And when I came—

THE COURT: Whenever it's asked for.

THE WITNESS: And when I came to court, your Honor—

THE COURT: You got a copy of it, did you not?

THE WITNESS: That's correct. Yes, I did. And I gave it to Mr. Donn.

THE COURT: I always insist that my law clerks give a copy of every presentence report to the attorney for the defendant in every case before sentencing, before I even come out for sentencing. You got it.

THE WITNESS: I did.

THE COURT: What did you do with it?

THE WITNESS: I briefly looked at it again and I gave it to Mr. Donn for him to review.

THE COURT: What did he do?

THE WITNESS: He read it—or he read portions of it. I can't say that he read the whole thing.

THE COURT: Well, he had it in front of him?

THE WITNESS: Yes, sir.

THE COURT: Did he turn the pages as he read it?

THE WITNESS: Yes, sir. I think I told him prior to the time he began the review of the presentence report that he should

look first at the evaluation section, which is at the end of the report, and then go back over the other portions of the report, such as his prior record.

THE COURT: All right. I put in front of you the original presentence report and ask you if that is the original of what you showed him.

THE WITNESS: Yes, your Honor, it is.

· THE COURT: Mark that as Court's Exhibit 2. If the defendant doesn't have a copy, hand him a copy from the government's file.

MR. MINK: We have a copy, your Honor.

THE COURT: You have a copy. All right. You must have had to get it up in the circuit. All right. You did show it to him and he read it.

THE WITNESS: He read portions of it, your Honor.

THE COURT: Certainly he turned the pages as he read it.

THE WITNESS: Yes, sir. And he had the opportunity to read the entire thing.

THE COURT: You told him to read it?

THE WITNESS: I did, yes.

THE COURT: All right. Did you notice in here—did you bring to his attention this record that it showed?

THE WITNESS: I did, yes, your Honor.

THE COURT: Petty theft, burglary, joyriding, tampering with a vehicle, plain drunk, shoplifting, burglary, failure to disperse. Another one shows here, the one they complain about, 11–22–71, possession of dangerous drugs and burglary both. Do you remember that?

THE WITNESS: Yes, your Honor, I do.

THE COURT: You showed him that?

THE WITNESS: Yes.

THE COURT: And next is burglary, another burglary, and then under "Evaluation," it says he has a hostile, belligerent attitude was surly and manipulative during the probation interview, amongst other things. You had him read that specifically, particularly?

THE WITNESS: Yes, your Honor.

THE COURT: What did you do after that?

THE WITNESS: Your Honor, with regard to the prior record, apparently I did not see in his prior record the fact that Mr. Donn had been convicted or had entered a plea of guilty to the possession of dangerous drugs. In my notes on the presentence report, I simply list his adult record as involving primarily theft crimes, no drugs or narcotics crimes.

THE COURT: What notes do you have there?

THE WITNESS: I have one yellow sheet of paper that I—

THE COURT: Let's see it a second.

THE WITNESS: These are my notes at the time that I was reviewing the presentence report.

THE COURT: With him?

THE WITNESS: No. At the time that I was reading the presentence report up in the Probation Office.

THE COURT: All right. Then did you discuss these things with him?

THE WITNESS: Well, I had him read the prior—the other side of the page does not pertain to this case, I don't believe. It's legal research.

(Brief pause in the proceedings.)

THE COURT: That's legal research you did in this case?

THE WITNESS: It may very well be, yes, your Honor.

THE COURT: Well, is it or isn't it?

THE WITNESS: May I look at it more closely, your Honor?

THE COURT: Yes. Because I want to make that part of the record, too, if you can identify it.

(Brief pause in the proceedings.)

THE WITNESS: As a matter of fact, this is research I did in connection with this case, and in particular, in connection with the admissibility of Mr. Donn's confession.

As I now recall, Mr. Donn was first arrested by state authorities, I believe, or at least taken into custody by state authorities, and then he was questioned while in state custody by federal authorities, and then later taken into federal custody on the federal bank robbery charges. I see here that I did some research concerning the delay in bringing a defendant to a magistrate after he has been arrested on a federal charge, and I attempted to establish in my research that the time of the state arrest would start the time running for a reasonable period of time within which to bring a person to a magistrate.

THE COURT: But you found it doesn't.

THE WITNESS: Not in this case. It didn't help.

THE COURT: All right. How long did it take you to do that research, in your best estimate, legal research?

THE WITNESS: May I consult my records, your Honor?

THE COURT: Surely. And while you are at it, let's get all the time that you spent with this defendant.

THE WITNESS: Perhaps an hour and a half.

THE COURT: —in behalf of this defendant.

THE WITNESS: Perhaps an hour and a half for the research. On November 13th, that was the day that I was appointed to represent Mr. Donn. I met with him in the morning before the hearing before the magistrate and then had a conference with him prior to the time we came to this courtroom. My records show that on that day, although the trial setting in your Honor's courtroom took only a quarter of an hour, I spent a total of three hours and a quarter, three and a quarter hours with him.

THE COURT: With the defendant on what date?

THE WITNESS: This was on November 13th. I don't think that the entire period of time was spent with the defendant. I think that a couple of hours of that time was spent before the magistrate in the morning at the time of the calendar; however, approximately an hour and a quarter was spent with Mr. Donn on the 13th.

THE COURT: And you swear to that?

THE WITNESS: I do, your Honor.

THE COURT: Despite the fact he says you only spent a couple of minutes with him?

THE WITNESS: I do, your Honor.

THE COURT: Go ahead.

THE WITNESS: On December the 7th, I had a conference with Mr. Donn. My records show that the conference lasted one hour. I believe—I don't know offhand if there was another—my records also indicate that there was no court hearing scheduled for December 7th, so this was one of the days that I traveled to the Los Angeles County Jail and met with Mr. Donn in the attorney's waiting—or the attorney's room at the Los Angeles County Jail, and at that time I would have had the discovery material, the FBI report.

THE COURT: How much time did you spend with him then?

THE WITNESS: One hour.

THE COURT: All right. The next time.

THE WITNESS: I also discussed the case with the U.S. Attorney, the court clerk, and others on that day, on December 7th. I visited Mr. Donn, I believe, on one other occasion in the Los Angeles County Jail probably in conjunction with my visit to another client who was also incarcerated in the jail. I do not show that in my records, though, but I believe I visited him twice. On December 18th, I had a conference with the United States Attorney. I reviewed—a further review of documents and trial preparation that day because we were scheduled to go to trial the following day, and then on the morning of December 19th, we were in the courtroom for approximately three and a half hours—Well, probably extended into part of the afternoon, actually, but we selected the jury in the morning, then we had a hearing with regard to the admissibility of Mr. Donn's confession. I

show a period of time of three and one-half hours spent with Mr. Donn that morning. A conference with the United States Attorney, a conference with Mr. Donn, another one-half hour, but that would have been just—that would have simply have been a conference between Mr. Donn and myself not during the trial.

THE COURT: I'm curious about something. Maybe defense counsel can enlighten me. I am wondering why the opinion doesn't mention the fact that it had gone to trial and we spent that much time in trial. Did you inform the Court of Appeals of this?

MR. MINK: Our brief, your Honor, dealt with the presentence. We didn't even deal with the other issue, the guilty plea. It dealt strictly with the question of the presentence report. The Court of Appeals picked up that other issue on their own.

THE COURT: I know. But you know, when you find out how much time this attorney spent with this man, that seems to me a very relevant factor for the Court of Appeals to know. Certainly they are going to know it from this hearing, even though you didn't tell them about it in your briefs.

MR. MINK: Our briefs didn't deal with this issue at all. It dealt with the presentence report.

THE COURT: No. The issue is ineffective assistance of counsel. If he's ready to go to trial and has spent all that time, that's part of effective assistance of counsel in my view. I so find.

MR. MINK: Your Honor, what I am stating is that the circuit court raised that issue on their own.

THE COURT: I understand that. But they might not have raised it had you pointed it out and gotten a full transcript. What transcript did you get, if any, to take up to the Court of Appeals?

MR. MINK: If I recall, your Honor, the transcript before the Court was not in regards to the trial. It was in regards to the motion which was denied. It did not have to do with the trial aspect at all.

THE COURT: With the sentencing aspect?

MR. MINK: Right, only.

THE COURT: Did you send up a copy of that transcript?

MR. MINK: That transcript was not prepared until this morning, your Honor.

THE COURT: I know it. Why didn't you get it before the court?

MR. MINK: Because, your Honor—

THE COURT: A transcript of the sentencing. If sentencing was to be an important item of effective assistance of counsel, I would think you would consider that to be an important point, that and the guilty plea.

MR. MINK: Well, the appeal dealt strictly with Mr. Donn's motion to make—

THE COURT: I know when he made his motion, because I got a copy of it.

MR. MINK: A year and a half after the trial is when the motion was made.

THE COURT: Sure. Where he filled it full of lies, perjurious statements. That's my finding.

MR. MINK: Yes, your Honor.

THE COURT: And yet you didn't give a copy of the transcript of either the plea of guilty or of the sentencing or of the day of trial to the Court of Appeals, did you?

MR. MINK: No, your Honor.

THE COURT: That's ineffective assistance of counsel if I ever heard of it. It seems to me a deliberate deception of the Court of Appeals, which I won't tolerate. I don't think any trial judge should tolerate it. If it happens again, Mr. Mink, watch out: Sanctions may be levied. I think you ought to tell the Court of Appeals the entire story of the entire representation by counsel, and to take it out on Mr. Handzlik, who is one of the top-notch defense lawyers that has ever appeared in my court and to call him ineffective in his assistance as counsel for this man is to me—Well, it's beyond the pale of an ethical attorney.

MR. MINK: Your Honor, I did not raise the issue of ineffectiveness of counsel. The circuit court did.

THE COURT: I understand you didn't raise the issue, but you didn't present all the facts which led them to raise the issue, and you allowed this client of yours to raise the issue. You know, that's the sort of thing that cries to heaven for vengeance. It certainly cries to the Appellate Court for reconsideration. I don't know why the U.S. Attorney didn't do it and try to get a full en banc hearing. It seems to me it's ridiculous.

At any rate, this yellow piece of paper you handed me, on the one side it has your research.

THE WITNESS: That's correct, your Honor.

THE COURT: How much time did you spend in the research?

MR. HANDZLIK: Perhaps an hour and a half.

THE COURT: On the other side is a description of what you saw in the presentence report?

THE WITNESS: Yes, sir.

THE COURT: And this you discussed with the defendant?

THE WITNESS: Yes, sir, I did.

THE COURT: Each one of these items?

THE WITNESS: I didn't discuss them each one with him; however, we looked at his prior record and he read the section of that report.

THE COURT: You pointed out, did you not, his prior record on these counts?

THE WITNESS: Yes, your Honor.

THE COURT: "Caught in truck, vehicle tampering; two counts of petty theft." What is the next thing? Something 1970, b–u—

THE WITNESS: B–u–r–g. It's an abbreviation, my abbreviation for "burglary."

THE COURT: "Burglary 1970, broke window, crawling; burglary 1971, same thing; burglary 1975, beauty parlor, coins;

burglary, 1976, convicted on scene—" Is that "convicted on scene market"?

THE WITNESS: "Arrested on scene."

THE COURT: And "market."

THE WITNESS: I think it was a market, yes.

THE COURT: And "Probation revocation over his head, parole," and so on. And then you point out here—you have here "No violence, no force, bungled break-ins." And then you have another thing here that—you say "Offense out of character. Hostile, belligerent, surly, arrogant. Change attitudes through behavior mod." Modification?

THE WITNESS: Modification, yes, sir.

THE COURT: 4205(b)(2) is the number you asked for at the time of sentencing.

THE WITNESS: Yes, your Honor.

THE COURT: That is 18 U.S.Code 4205(b)(2).

THE WITNESS: Yes, sir.

THE COURT: Parole at the discretion of the Parole Commission. All right. Mark this as Court's Exhibit 3 at this hearing.

THE WITNESS: In reviewing that handwritten note, it is apparent to me that I did not see the fact that the presentence report said that Mr. Donn had entered a plea of guilty to a drug charge.

THE COURT: Yes. Let me see that.

THE WITNESS: It doesn't jump out from the report. I reviewed it again today.

THE COURT: I have got it here. It's Exhibit 2, page 4. I hope the Probation Office will keep a copy, because the original is going to be marked to go into evidence here and the reporter will be instructed to attach it to the transcript of this hearing, when and if you get to it, to be returned to the Court of Appeals in accordance with their opinion, all exhibits attached. And I want the original of the transcript, but you can send up the copies to the Court of Appeals—Well, send the original. Let them have the original of it and the exhibits, but make copies of the exhibits for me and for my clerk and for

counsel. They can have that, too, if they want to pay for them. It's up to you. We don't pay for them. It's up to defense counsel, too.

Now, you are talking about the item that appears here on page 4 of the presentence report. It says here: "11–22–71: Possession of dangerous drugs; burglary (1 count.) Los Angeles, California. Los Angeles County Superior Court, Information A120094, consolidate with Information A120136, pleaded Guilty to 1 count of Possession of Dangerous Drugs, and 1 count of Burglary, sentenced to State Prison pursuant to Section 1202(b) of the California Penal Code."

THE WITNESS: Apparently, your Honor, after reviewing not only my notes, but the transcript of what I said at the time of sentencing, I either did not see the fact that the report said that Mr. Donn had been convicted of a drug offense—I can't really explain it; however, I will say that Mr. Donn did not discuss with me or point out to me that he had not been convicted of that offense at that time.

THE COURT: Do you recall that in the course of the sentencing, you mentioned the following things: "His past record indicates that this is the first time he has been involved in any acts which would be considered violent"? That's what you said.

THE WITNESS: Yes, your Honor.

THE COURT: "There are no prior robberies in his past." That's what you said.

THE WITNESS: Yes, your Honor.

THE COURT: "There are no uses of dangerous or deadly weapons. As a matter of fact, there is no taking by force or by violence or by intimidation in his past." What you were pointing out to the Court was that his acts consisted of "amateurish" burglaries; right? You mention it's amateurish.

THE WITNESS: Yes, your Honor.

THE COURT: "In both of those instances which involve burglaries, Mr. Donn has been apprehended on the scene or a short distance away from the scene," vehicle tampering, caught in a camper, being

placed on parole. "Both of those matters are still presently pending against Mr. Donn. The Parole Board has had a hearing, has found Mr. Donn in violation of his parole, and I believe has added an additional six months to his sentence; however, at the present time Mr. Donn is still facing probation revocation proceedings with regard to one of the burglary convictions that he has. I point this out, your Honor, simply to make the point that a bank robbery which Mr. Donn admitted having committed in the case is totally out of character and Mr. Donn's explanation of why he committed the bank robbery seems to lend credence to the fact that it was an act of impulse, something that was done on the spur of the moment, a wrongful act done on the spur of the moment out of desperation at not having employment, at not being able to properly support his common-law wife and child. So I would ask your Honor to take into consideration the fact that this man, although he does have a lengthy criminal record, does not have a record of violence or of the use of a weapon. When imposing sentence, I would hope that the Court will keep in mind that perhaps this gentleman's behavior and attitude can be changed through the programs in a federal prison. Thank you, your Honor."

The Court said: "All right. Mr. Donn, do you have anything you wish to say?"

Then he says: "Yes, sir, your Honor, I do.

"The Court: All right. If you will speak into the mike. All right.

"The Defendant: Yes, your Honor. I am aware the Court is not sympathetic about any acts of any type of crime, but like when I got out of the Department of Corrections I had gotten a job where I was digging holes 9 by 9 by 12, you know, with a pick and a shovel. I did this for a month and a half until I was laid off. During that time, from then on, I couldn't find no type of job."

I am reading from page 5 starting at line 17.

"I had temporary work within the community working at a place which—but then—working at a place, but then that ran out and it was hard for me to obtain any of employment whatsoever. I filled out an application, and they asked if I was convicted of a felony, and I told them yes, and they couldn't use me. I never knew what to do because during the age of 15—I seen the street about three and a half years, you know, since I was about fifteen years old, and then social and things like that, or paying rent and those problems, I have no knowledge of that.

"The Court: Well, all right. How about the government?

"Mr. O'Neill: Yes, your Honor.

"The Defendant: Your Honor—

"The Court: Excuse me. Go ahead.

"The Defendant: I never did anything like this. Violent crime is something I never committed to hurt somebody—more than take what they had. What I did was rip-off a car.

"The Court: The government?

"Mr. O'Neill: The government recommends a sentence of ten years in custody for this defendant. The man has served four prior felony burglary convictions and one possession of a dangerous drug conviction, all felonies."

That's what Mr. Brian O'Neill, the government attorney, said.

THE WITNESS: I think it was Brendan O'Neill.

THE COURT: Brendan O'Neill, yes.

"The most sentence he ever received under any of those is one year in the county jail. The defendant was characterized by the probation officer who prepared the presentence report as surly and manipulative, and he has been less than candid with the authorities. He told the FBI, when they interviewed him in custody, that he was drinking when he committed the robbery. He told the probation officer that in fact he was on PCP. It is his conduct in the past in this case, his disregard for the rights of society, the rights of others, and his obliga-

tions to society that warrants a severe punishment in the case. With that in mind, the government recommends ten years.

"The Court: Do you—

"Mr. Handzlik: If I might be heard briefly.

"The Court: Yes.

"Mr. Handzlik: On one prior occasion Mr. Donn was sentenced to state prison for a period of four years, and on an earlier occasion was sentenced to state prison for a period of two years. He has received substantial sentences for what I would characterize as rather minor burglaries; that is, in the realm of things in terms of the way they were committed and the amounts of money he was seeking at the time.

"The Court: Well, I take into consideration a couple of things. One is that the charge, as I recall it, was robbery without a dangerous weapon, but I want to be sure."

I am looking, I think, at this point—let the record show I was looking at the official file.

"Mr. Handzlik: That is correct, your Honor.

"The Court: That is as I recall it, and so he didn't have a gun or a dangerous weapon with him. The second thing is that, while he started out with a jury trial, he didn't take the stand and eventually he pled guilty; he didn't perjure himself. I take his change of plea to guilty as an indication of his contrition at having committed the offense. At least he recognizes he did wrong, and I am taking that into consideration. Also, I want to see him get some treatments. He needs some treatment for drug or alcoholic addiction. He also needs vocational or educational and psychiatric treatment, and I have just understood from another case that I think you were in, Mr. Assistant United States Attorney, Mr. Robertson—

"Mr. O'Neill: Mr. O'Neill, your Honor.

"The Court: —O'Neill, yes. Well, that was today or this morning, I can't remem-

ber, where the bureaucrats up in the Bureau of Prisons would not do what I wanted done. I wanted my sentence made concurrent with their sentence on a probation violation."

I should have said "parole violation." I think I did, but it has "probation."

"So I just—they wouldn't give a treatment unless the man got eight years or less, but if that's their attitude, that's what I am going to give.

"Mr. O'Neill: Your Honor, with that in mind—I understand the Court's concern with the people in the Bureau of Prisons or the Parole Commission not following the Court's order. I think the way to do that was to get them in here and possibly issue a contempt citation.

"The Court: No.

"Mr. O'Neill: This man has violated the law, and a sentence should be imposed upon him.

"The Court: If they don't learn this way, they won't learn with a contempt citation.

"Mr. O'Neill: Very well, your Honor.

"The Court: Is there any legal reason why sentence should not now be imposed?

"Mr. Handzlik: No, your Honor.

"The Court: It is ordered and adjudged that the defendant will be committed to the custody of the Attorney General or his authorized representative for a term of eight years, provided, however, that he shall be eligible for parole at any time the Parole Commission determines under 18 U.S.Code 4205(b)(2). So ordered.

"Mr. Handzlik: Thank you, your Honor.

"The Defendant: Thank you.

"The Court: And I will so recommend. I just hope you take advantage of the time you will get up there. I am not going to recommend here—yes, put it in the judgment, too, Mr. Clerk, so it is emphasized that I urgently recommend vocational and educational and psychiatric treatment for this man, and that's why I am giving him the eight years, and I hope that the Bureau of Prisons—I order that the Bureau of Prisons give him the treatment. Let's see if that gets anywhere.

"Mr. Handzlik: Thank you, your Honor.

"The Court: We will see what happens."

All right. Do you remember all of that?

THE WITNESS: Yes, sir, I do.

THE COURT: All right. Do you have anything you want to add?

THE WITNESS: There are two other matters, your Honor.

THE COURT: All right.

THE WITNESS: Mr. Donn was interviewed and questioned by the probation officer during the time that the presentence report was being prepared. The defendant's version of the offense as contained in the presentence report is consistent with what Mr. Donn had earlier told the FBI agents at the time that he was arrested on these charges. These statements, of course, were made after the guilty plea was entered and prior to the time that he was sentenced in this court. It may or may not be pertinent to point out, your Honor, that after sentencing on January 15, 1979, I continued to represent Mr. Donn in connection with a motion to reduce his sentence under Rule 35, and in that connection, Mr. Donn wrote three or four letters to me supplying me with information that I could use to bring to this Court's attention in connection with the Rule 35 motion. I have the letters here. Also, I did file, prepare and file a Rule 35 motion and had numerous telephone conversations with members of Mr. Donn's family prior to the time that we had a hearing on the Rule 35 motion on May 29, 1979, so I continued to represent him without complaints from Mr. Donn after the sentencing.

THE COURT: How much time did you spend with him on that representation post-sentencing.

THE WITNESS: I wrote a letter to Mr. Donn. I received a letter from him on April 13th. I put down a half hour on my time sheets.

THE COURT: Have you got copies of those letters?

THE WITNESS: Yes, I do, your Honor. I have copies that I received, if you would like them.

THE COURT: Yes. I want those he wrote.

THE WITNESS: Very well, your Honor.

THE COURT: If you want to get copies for your file, you can have the clerk Xerox them for you. I want everything that you did for this man before he got Mr. Mink in to represent him. Insofar as you have shown assistance to this man, I want to see whether it was effective assistance or ineffective assistance.

THE WITNESS: This work on behalf of Mr. Donn was done after I had submitted my voucher for payment to this Court.

THE COURT: Did you do it for free, then, or did you get paid for it?

THE WITNESS: I did it for free, your Honor.

THE COURT: How much time did you spend?

THE WITNESS: I have here a letter that was received in my office on April 12, 1979, in which Mr. Donn asked me about the Rule 35 motion.

THE COURT: All right.

THE WITNESS: I then responded to Mr. Donn on April 13, 1979 with that letter. In connection with those two items, I put down one-half hour on my time sheet. Mr. Donn sent me two other letters. I received one of them on May 1st, 1979, and enclosed with that was something from the State Parole officials regarding his state parole, I believe the termination of his state parole.

THE COURT: I notice in your first letter to him here on April 13th you asked him to send you anything about his conduct while in prison, that you would follow through on it, would try to shoot for reduction to five years, so he can return to California, and this is addressed to Englewood, Colorado.

THE WITNESS: Yes, your Honor.

THE COURT: The federal correctional institution there. Then you say you got two more letters from him.

MR. HANDZLIK: Here is the second— here is—

THE COURT: No. One letter of—you received it May 1, 1979. Then he was talking about his discharge from the State of California and having been forwarded to the FBI, so he sent along a copy of the vote sheet from the State Community Release Board discharging him effective 2-9-79. All right. And did you answer that?

THE WITNESS: During this period of time, Mr. Donn was calling me on the phone collect, and I was accepting those.

THE COURT: Collect calls?

THE WITNESS: Yes, your Honor. I was accepting those calls and asking questions and acknowledging the receipt of information that he had sent me. The last letter that I received from Mr. Donn was received in my office on May 10, 1979. It has the names of family members in the Los Angeles area and also my handwritten notes concerning family members.

THE COURT: Where are your letters acknowledging receipt of these collect calls?

THE WITNESS: I didn't put that in letters, your Honor. I simply talked to him on the phone.

THE COURT: How many collect calls did you get?

THE WITNESS: Your Honor, I have no recollection at this time.

THE COURT: About how many?

THE WITNESS: I'd say three.

THE COURT: And you paid for them?

THE WITNESS: Yes, your Honor.

THE COURT: How much did they cost?

THE WITNESS: I really have no way to estimate. They were between Englewood, Colorado and Los Angeles during the day, during weekdays.

THE COURT: What is your best estimate? About $3 a call?

THE WITNESS: I would say about three to four dollars a call.

THE COURT: That's about right. This is all the correspondence, now, before you filed the Rule 35 motion?

THE WITNESS: Rule 35 motion, yes, your Honor.

THE COURT: Mark this as Court's next in order.

THE CLERK: Exhibit 4, your Honor.

THE COURT: Exhibit 4, all that correspondence.

All right. Then you appeared before the—you filed before the Court a Rule 35 motion; correct?

THE WITNESS: Yes, your Honor. And actually, in terms of the time I spent—

THE COURT: How much time did you spend on that?

THE WITNESS: The preparation of the Rule 35 motion, I have one hour on my time sheet and telephone communications with Mr. Donn's family members and with the client. Actually, here is apparently a call that I received, a call on May 22nd from Mr. Donn, because I have down on my time sheet that I spoke with him on the telephone that day.

THE COURT: When did you file the motion? May 9th?

THE WITNESS: May 9th, yes, your Honor.

THE COURT: All right. That will be the next exhibit. I will take a copy out of my file and counsel can look at it, see if it doesn't agree with the official file.

Make that Court's Exhibit 5.

And you spent how much time on that, you say, in preparation and in the drawing up the application?

THE WITNESS: In looking at my file, your Honor, I apparently prepared the motion to reduce under Rule 35 on May 7th, and I put down on my time sheet one-half hour for the preparation of that motion, although it probably took me a little bit longer than that.

THE COURT: What is the date of that filing, Mr. Clerk, Exhibit 5?

THE CLERK: May 9, 1979.

THE COURT: Let me see if I have got that. I have two copies up here.

THE WITNESS: There is a notice of motion, too, your Honor.

THE COURT: Well, then, we will put the motion together with the notice of motion or the notice of motion together with the motion and make that part of Exhibit 5. All right. Then you filed a supplemental declaration?

THE WITNESS: Yes, your Honor. I prepared that on about May 21st or 20th of May and filed it. I have on my time sheet here that I spent one hour working on the supplemental declaration in support of the motion.

THE COURT: All right. There is a copy of that, Exhibit 6.

All right. What further did you do for this man?

THE WITNESS: There was a hearing on May 29th on the Rule 35 motion in this courtroom. I spent an hour and a half in court and an hour traveling to and from court, half an hour each way.

THE COURT: Then I made a minute order denying it; correct?

THE WITNESS: That's correct, your Honor.

THE COURT: On May 29th.

THE WITNESS: Following shortly after the hearing on May 29th, I received another collect call from Mr. Donn and told him the results of the hearing.

THE COURT: All right. How much time did you spend altogether on that, then? How much time did you say you spent in court?

THE WITNESS: Well, in court on the 29th, an hour and a half. The hearing didn't take that long, but your Honor had other matters on calendar. The total period of time in connection with the Rule 35 motion was five and one quarter hours that I have on my time sheets.

THE COURT: All right. Can you think of anything more you did for this man?

THE WITNESS: No, your Honor.

THE COURT: All right. Open to question now for the government.

MR. ROBERTSON: No questions, your Honor.

THE COURT: Defense?

MR. MINK: Yes, your Honor. Thank you.

CROSS–EXAMINATION

BY MR. MINK:

Q. How long prior to the sentencing did Mr. Donn receive the report, the presentence report?

A. He would have received it when I entered the courtroom on the day of sentencing. Let me take a look at my records again.

(Brief pause in the proceedings.)

THE WITNESS: I would say that he had the presentence report perhaps at least a half hour prior to the time he was sentenced.

BY MR. MINK:

Q. In your opinion, based on the size of the report, was there sufficient time for him to review all the details for factual accuracy?

A. Yes. It's a very short report.

Q. Did you discuss any aspect of the report with him?

A. I did, yes.

Q. Did you discuss the drug possession charge with him?

A. No, I did not.

Q. Did he point out any errors in it at that time?

A. No, he did not.

Q. The U.S. Attorney during the hearing indicated in argument to the Court that there was a drug conviction charge. Is there any reason that there was no reply made to that?

A. I can't think of any at the present time.

Q. You weren't aware that that drug charge had been dismissed?

A. At that time I was not aware that the drug charge had been dismissed, and my best recollection is that during the sentencing, I did not recognize or realize or understand that Mr. Donn had been convicted of a drug charge.

THE COURT: So you didn't argue it to the Court.

THE WITNESS: No.

THE COURT: All right.

THE WITNESS: I will say, sir, if I may—

BY MR. MINK:

Q. Certainly.

A. I did respond to what the U.S. Attorney said about Mr. Donn in connection with his sentencing. I responded to that by pointing out that the statements of the U.S. Attorney were in error, in that Mr. Donn had spent a certain amount of time in prison on his prior charges. It seems to me that at the time that I would have responded to what Mr. O'Neill said about the defendant's drug charge if I did not believe that the defendant had been convicted of a drug charge, so I'm only guessing, but what I think probably happened was that I didn't realize it up until the time Mr. O'Neill spoke about it. At the time he spoke about it, I again looked at the prior record section of the report and saw that there was a mention there of a drug charge and so I didn't correct Mr. O'Neill on that point, because I looked in the presentence report and saw that in fact it did say that Mr. Donn had been convicted of a drug charge, and there was no point in dwelling upon it.

Q. So it wasn't until later you determined that it was false information?

A. Well, I don't know as I sit here today that it was false information other than Mr. Hutson, the probation officer, has told me that since that time—and I guess recently he has examined the records of that case over in the superior court and he has determined that Mr. Donn entered a plea of guilty to the burglary charge, which was consolidated with a drug charge, and that Mr. Donn was not sentenced on

the drug charge and did not enter a plea to it. I only learned that, as a matter of fact, today.

Q. When you handed Mr. Donn the report, did you suggest that he read it to verify its accuracy?

A. I probably told him to read it.

Q. Did you ask him to see if the facts in there were correct and, if not, to tell you what was incorrect or any words to that effect?

A. Well, to be perfectly honest with you, Mr. Mink, I can't recall specifically what I said to Mr. Donn, but I know that in similar situations, I say to my clients: "Is there anything in there that is inaccurate? Is there anything in there that you want me to call to the Court's attention for you?" I can only assume that I said that to Mr. Donn on the day of the sentencing in this case, but I cannot recall.

Q. Thank you.

No further questions.

THE COURT: All right. You may step down.

THE WITNESS: Thank you, your Honor.

THE COURT: Thank you, Mr. Handzlik.

Now, I take it the next one I want to hear from is the defendant, if he wishes to, although it's been admitted, as I see it—Well, perhaps we ought to have Mr. Hutson up on this possession of dangerous drugs.

Why don't you take the stand, Mr. Hutson. You are the probation officer. Then we will have the defendant.

### WILLIAM G. HUTSON,

called as a witness, having been first duly sworn, was examined and testified as follows:

THE CLERK: Please be seated.

THE COURT: All right. State your name for the record.

THE WITNESS: William G. Hutson, H-u-t-s-o-n.

THE COURT: Mr. Hutson, in looking at the original presentence report here dated January 15, 1979, do you find anything in it that is false or misleading? If so, what is it?

THE WITNESS: On page 4.

THE COURT: Page 4. All right.

THE WITNESS: The entry dated 11–22–71 under the section of conviction it says "Possession of dangerous drugs; Burglary (1 count), Los Angeles, California." Then it recites: "Los Angeles County Superior Court, Information A120094, consolidate with Information A120136, pleaded Guilty to 1 count of Possession of Dangerous Drugs, and 1 count of burglary, sentenced to State Prison pursuant to Section 1202(b) of the California Penal Code." When I wrote that, I researched the Los Angeles County Superior Court records and discovered that the two cases had been consolidated. I probably made a mistake in putting down "Possession of Dangerous Drugs," because he pled to only one count of the two informations, that is, burglary second degree, and nothing happened. He was sent on a diagnostic study. He was returned to the diagnostic—from the diagnostic study and then sentenced to state prison. In the court records, there is no indication of a dismissal of the drug information and that threw me off guard and I put down a conviction of possession of dangerous drugs wherein as indeed there was only a conviction of a burglary on the consolidated information.

THE COURT: All right. Anything else misleading or false in the probation report to your knowledge?

(Brief pause in the proceedings.)

THE WITNESS: The issue of education on page 6.

THE COURT: All right.

THE WITNESS: I based the drop-out from school on the Los Angeles County probation file, which I had in my possession and still do, and the fact that he did not complete his high school was based on the California Department of Corrections file dated January 6th, 1977, which stated he

claimed 11 years of education. I don't know that there is any error there.

THE COURT: Well, does the file that you got from the state show that he dropped out at the age of 17?

THE WITNESS: It doesn't say an age. It says the 11th grade. It's called a cumulative case summary and on the section on education, it says claimed grade eleven and age left school 18, so if I said 17, according to the Department of Corrections file, it should be 18. I had no documents stating that he was a high school graduate available.

THE COURT: All right. He claims three false statements, at least according to the opinion up in the Court of Appeals, assuming they accurately set forth what he claims there. He claims the presentence report was inaccurate. I am reading from page 5718 of the Appellate slip sheet:

"Donn alleges that the presentence report was inaccurate because it stated: (1) that he was unemployed before his conviction; (2) that he did not finish high school because of bad citizenship grades; and (3) that a prior conviction for burglary 'was consolidated' with a drug possession charge when in fact the drug charge had been dismissed."

Well, you couldn't find any dismissal of the drug charge.

THE WITNESS: I have a certified copy of the court document. There is no indication of dismissal of the drug charge. There is an indication of a consolidation. And with respect to work, during the—

THE COURT: But the plea was not to the drug charge, but only to the—

THE WITNESS: Burglary.

THE COURT: —burglary. All right.

THE WITNESS: The issue of work, did you raise that?

THE COURT: So the probation report is false or inaccurate or misleading in that regard.

THE WITNESS: Yes, your Honor.

THE COURT: Now, what is the other one? What about this, that he didn't finish high school because of bad citizenship grades?

THE WITNESS: That's stated in the Los Angeles County probation document.

THE COURT: Dated what?

THE WITNESS: Dated 9–8–76.

THE COURT: Let me see it. Can you spare it? Have you got a Xerox?

THE WITNESS: I will give you the copy I have.

THE COURT: All right. You can pick up a Xerox if you want it from the clerk.

(Brief pause in the proceedings.)

THE COURT: Yes. It says he failed most classes and had unsatisfactory citizenship grades and has a lot of other information in there which you didn't bother to put in, some of which you did put in.

THE WITNESS: Yes, your Honor.

THE COURT: Well, let's put it all in for the edification of the Court of Appeals, Exhibit 7.

Did you honestly believe it when you took it down and wrote it in your report?

THE WITNESS: Yes, your Honor.

THE COURT: Did you have any intention to mislead or deceive?

THE WITNESS: No, your Honor.

THE COURT: All right. Well, the other one was that he was unemployed before his conviction. Now, he says, according to this opinion, slip sheet, page 5719, to refute that one, he gave a letter and time sheet from Victor Temporary Services, VTS, showing that VTS employed him on a number of temporary jobs from May 9, 1978 through October 15, 1978.

THE WITNESS: During the probation interview, the defendant told me that he had part-time employment. I called his parole agent, and the parole agent indicated to me that as far as he knew, his client was unemployed.

THE COURT: Did you believe it?

THE WITNESS: I believed the parole agent. And also, your Honor, at that time the Parole Commission did not take into

consideration part-time employment as an issue with respect to a salient factor score, and because of that fact, I did not give great emphasis to the issue of his part-time employment.

THE COURT: Where did you say that he wasn't employed at all? That's what I don't see.

THE WITNESS: I'm not sure I said it.

THE COURT: I don't think you said it anywhere. He says you said it, or at least the slip opinion at page 5719 says he says you said it.

MR. MINK: Page 2, your Honor, of the presentence report.

THE COURT: Let me see here. Page 2. All right. Let me look at it.

MR. MINK: Under "Defendant's Version."

(Brief pause in the proceedings.)

THE COURT: He couldn't obtain any jobs. That means he was out of work at the time of the burglary. What else could it mean? That's absolute nonsense. That's on page 5719 of the slip opinion, some more nonsense in that opinion. "The local authorities had run out of CETA funds" and he couldn't get any job. Did you believe all that? Did you believe what is said in there?

THE WITNESS: I believed what he told me.

THE COURT: What he told you. He told you this, did he?

THE WITNESS: Yes, your Honor.

THE COURT: All right. There was no intent to deceive him?

THE WITNESS: No.

THE COURT: You just put in the report what he told you?

THE WITNESS: I did. And I put in the report what the parole agent told me.

THE COURT: All right. Now, they say they have a transcript of his high school record. We will wait until he gets on the stand. Let's see if they produce it. I want to see it. All right. Any questions from the U.S. Attorney?

MR. ROBERTSON: No, your Honor.

THE COURT: Any questions from defense counsel?

MR. MINK: No questions, your Honor.

THE COURT: You may step down.

All right. Any witness for the defense on thise points?

MR. MINK: Yes, your Honor. I call Mr. Donn to the stand.

THE COURT: All right. Resume the stand.

ARON EDWARD DONN,

called as a witness on behalf of the defense, having been previously duly sworn, resumed the stand and testified further as follows:

THE COURT: You have previously been sworn. State your name for the record.

Sorry to hold up the Marshals, but I have got to be in San Diego tomorrow for the workshop where we hopefully will have an opportunity to confront some of these judges on the Court of Appeals.

All right. Go ahead and state your name for the record.

THE WITNESS: Aron Edward Donn, D-o-n-n.

THE COURT: All right.

DIRECT EXAMINATION

BY MR. MINK:

Q. Mr. Donn, did you have an opportunity to review the presentence report prior to your being sentenced?

A. No, I didn't.

Q. Were you shown the report by your counsel?

A. No. I never saw it.

Q. When was the first time you saw it?

A. In TI when I was put in the Drug Abuse Program.

Q. Did your attorney offer to show you the report? Did he say "Here's the report, Mr. Donn. Read it"?

A. No.

Q. Now, you saw the report when you were at Terminal Island. Is that correct?

A. Yes.

Q. How long ago was that that you saw it?

A. In nineteen seventy—'79.

Q. Was that when you made your motion to the court?

A. Yes, I think that's when.

THE COURT: Which motion? There were a bunch of motions.

THE WITNESS: The first motion for a 2255 motion.

THE COURT: Which one?

THE WITNESS: 2255 motion.

THE COURT: Which one?

THE WITNESS: The first one.

THE COURT: All right. That was apparently—let's see. The first one—I don't know. That's 80-0279—No. It must have been the one that you went up on appeal on, 80-2729, because you filed another one, 80-02794, on June 19th. Let's see.

Can you find that in the official file, Mr. Clerk? When did he file the first one, 80-02729 or 80-2729?

THE CLERK: The first one, your Honor, was filed October 1, 1979.

THE COURT: All right. That's the one we have here before us on this evidentiary hearing that was appealed. But you filed another one, didn't you, on June 27, 1980, which is numbered 80-02794?

THE WITNESS: Yes. Because you showed—because you told me to show cause where—that the information in the presentence report was false because I never presented no documents on the first one and when I—

THE COURT: Who told you to show cause?

THE WITNESS: That's what the court told me to do.

THE COURT: Oh, you mean in my order—

THE WITNESS: Yes.

THE COURT: —denying your first motion—

THE WITNESS: And when I sent the—

THE COURT: —which is dated October 23, 1979. I just said you failed to provide the presentence report, that you failed to provide the evidence of false information, so I denied it. But that's given the number of 79-3837, not 80-2729. I don't understand it. What date did you say that 2729 was filed, Mr. Clerk?

THE CLERK: Your Honor, the first—

THE COURT: It's 80-2729. He's filed all kinds of them. He's filed 79-03837 on October 4, 1979, then he filed another one after I wrote my order of October 18, 1979. He filed another one—

THE CLERK: June 27, 1980. That's the second one.

THE COURT: That's June 27, 1980. It's 80-2729; right?

THE CLERK: No. It's 2794, your Honor.

THE COURT: 2794. That's filed June 27, 1980.

Now, I asked you when was this one called 80-2729 filed?

THE CLERK: Your Honor, that motion is not in the file.

THE COURT: It's what?

THE CLERK: It's not in the file, your Honor.

THE COURT: Oh, it must be up there on appeal, I guess, maybe in the appellate record. I don't know. It isn't in my file, either.

All right. Go ahead.

MR. MINK: Thank you, your Honor.

Q. Mr. Donn, on page 4 of the presentence report, it states that January 22, 1971, you pled guilty to possession of dangerous drugs. Is that correct? Is that a correct statement?

A. No, it's not.

Q. Were you accused of possession of dangerous drugs?

A. That case was dismissed.

Q. The charges were dismissed?

A. Were dropped. Yeah, they were dismissed.

THE COURT: Have you got any record showing that?

THE WITNESS: Yes, I do. I have an abstract of the judgment.

THE COURT: Where are they?

THE WITNESS: It's over there, on the desk over there.

THE COURT: Let's see it. Counsel, present it to the clerk.

(Counsel hands the clerk a document.)

(The clerk hands the Court a document.)

(Brief pause in the proceedings.)

THE COURT: I don't see anything on here saying that the drug charge was dismissed.

THE WITNESS: Can you turn it around? What does—

THE COURT: You tell—

THE WITNESS: —it state?

THE COURT: You tell—

THE WITNESS: In nineteen—

THE COURT: —where it shows on there.

THE WITNESS: In 1972 I was—

THE COURT: Where does it show on there? Maybe counsel can help you out.

MR. MINK: It doesn't state it on there that I can see.

THE COURT: Then why did you hand it to me?

We will mark it Exhibit 8.

THE CLERK: Exhibit 8.

THE COURT: You know, when you—

THE WITNESS: But there is no—

THE COURT: When you bring—

THE WITNESS: But there is no—

THE COURT: —hand it up as—

THE WITNESS: —drug charge.

THE COURT: —though it does show it—

THE WITNESS: But there is no—

THE COURT: —that's presenting—

THE WITNESS: There is no—

THE COURT: —a falsehood to the Court.

THE WITNESS: But there is no drug charge consolidated and me going to the penitentiary for it. So how could I be charged with it on a—

THE COURT: I am talking to your attorney. He says it shows it was dismissed and I say it doesn't show anything and he admits it doesn't.

MR. MINK: It doesn't show it dismissed, your Honor.

THE COURT: Then why did you say so? Why did you submit it as showing it?

MR. MINK: Your Honor, I don't believe I did.

THE COURT: Well, you did. I said: "Where is the paper?" He said you've got it and you handed it up.

MR. MINK: My client handed me a paper showing—

THE COURT: Well, why didn't you read it?

MR. MINK: I think the burglary—

THE COURT: I don't like that sort of thing. It's a deception on the Court. It borders on contempt and certainly unethical conduct.

THE WITNESS: I was sentenced—

THE COURT: I don't like it—

THE WITNESS: I was—

THE COURT: —counsel.

THE WITNESS: Hey, your Honor, I was sentenced to the—

THE COURT: Don't call me "Hey." You address me correctly, sir.

THE WITNESS: Your Honor, I was sentenced to the Department of Corrections in 1972 for one count of burglary on the 6th to 15th, which I was given a 1202(b) Youth Act commitment and which I did exactly three years, eight months on.

**558**

THE COURT: Where is the record showing that the drug charge was dismissed?

THE WITNESS: (No audible response.)

THE COURT: You told the Court of Appeals you had a record showing that.

THE WITNESS: Well, I sent the record in which I had to the Court and attached it to my 2255 motion.

THE COURT: Well, that certainly show it was dismissed. All right. Go ahead.

BY MR. MINK:

Q. Mr. Donn, page 6 of the presentence report says you dropped out of high school. Did you later complete high school?

A. First of all, I never dropped out of high school.

THE COURT: Where is your transcript of your high school—

THE WITNESS: Right over there.

THE COURT: —record that you graduated?

MR. MINK: I have it here, your Honor. I will give it to the clerk.

THE COURT: All right. Let me look at that.

MR. MINK: The second page, right-hand corner, date of graduation.

THE COURT: We will mark it next in order. What is it?

THE CLERK: Exhibit 9, your Honor.

THE COURT: All right.

(Brief pause in the proceedings.)

THE COURT: It shows "Date of withdrawal 12/17/70" and then it says "Date of graduation 12/11/70." How he could graduate on the 11th and withdraw on the 17th is beyond me. This is signed by Youth Training School. Where is that? That is a prison school, isn't it?

THE WITNESS: Yes.

THE COURT: Can you explain what it means, why it says you graduated on the 11th of December of 1970 but you withdrew on the 17th?

THE WITNESS: Of what year? December 17th?

THE COURT: Right. 1970.

THE WITNESS: Because I went home. I had completed and I asked them for my high school transcript.

THE COURT: All right. For what it's worth, in evidence, Exhibit 9. Anything further?

MR. MINK: Just a couple of questions, your Honor.

THE COURT: All right.

BY MR. MINK:

Q. Mr. Donn, were you employed by Victor Temporary Services from June of '78 until the time of your arrest?

A. On a temporary basis, yes.

Q. What do you mean by "temporary basis"?

A. Well, the place of business would call me every time in which they had temporary openings in certain spots that needed to be filled in certain warehouses, in certain—like Redkin Laboratories and Pacific Stereos, doing like loading trucks and so forth and doing warehouse work.

THE COURT: Where is the letter and time sheet from VTS that is mentioned on the top of page 5719 of the slip sheet that you allegedly sent up to the Court of Appeals?

THE WITNESS: Well, I don't have no time sheet, but I have a letter. The time sheet, I sent to the Court.

THE COURT: It says "A letter and time sheet from Victor Temporary Services. Employed from May 9, 1978 through October 15, 1978." And I note that the offense to which you pled guilty was the date of October 11, 1978, which was a year later— No. Wait a minute. It's the same year. You say that they gave a time sheet saying you were employed through October 15th when you robbed a bank on October the— you admitted you robbed the bank on October 11th, but you were working October 15th?

THE WITNESS: I was doing temporary work, as I said, at the time.

THE COURT: Was that the CETA employment?

THE WITNESS: No, it was not CETA. It was a temporary agency.

THE COURT: Why didn't you tell the probation officer that?

THE WITNESS: I expressed this to him.

THE COURT: Well, you also told him this here, that you were broke, just out of the state institution—

THE WITNESS: Yes. But I—

THE COURT: —things at home were tense.

THE WITNESS: Yes, that's what I told him.

THE COURT: You couldn't pay the rent, that you were looking for jobs, and you couldn't obtain any because you were an ex-offender.

THE WITNESS: That's right. I expressed to him everything.

THE COURT: You told him that?

THE WITNESS: I expressed to him everything that transpired.

THE COURT: And that the local authorities had run out of Comprehensive Employment Training Act funds, CETA.

THE WITNESS: For the CETA program.

THE COURT: Anything further?

MR. MINK: No, your Honor.

THE COURT: All right. Nothing from the government?

MR. ROBERTSON: No questions.

THE COURT: You may step down.

Any further evidence either side?

Case closed. Evidentiary hearing concluded.

The Court finds, necessarily finds:

1. The defendant is a liar and perjurer, and the Court doesn't believe him.

2. There was no effort—

You can sit down, if you don't mind, Mr. Donn.

2. There was no intent by the probation officer to deceive in anything the probation officer did. As a matter of fact, I think he was telling the truth all the way through except for the one point that might be considered misleading, a plea of guilty to possession of dangerous drugs. There is no showing of a plea as to that. There is no showing of dismissal, as he claimed to the Court of Appeals, so he lied to the Court of Appeals on that.

He lied to the Court of Appeals on the VTS. And while that record from the vocational school shows that he withdrew on December 17th but graduated December 11th, I find that very hard to believe. I think that's one of those typical things put out by one of the prison schools just to get rid of a problem.

At any rate, I did not rely on the possession or plea to any dangerous drugs. The transcript is absolutely clear that what I relied on were the prior nonviolent burglaries, and those are the only things I relied on, and I so told the U.S. Attorney as well as Mr. Handzlik, the defendant's attorney, who did everything he could possibly do in effective assistance, more than effective, way beyond the call of duty in the support and assistance as counsel to this defendant. Mr. Handzlik is a highly regarded lawyer, especially highly regarded in criminal cases for the defense, and he did everything that could be possibly expected of him, even to the extent of putting in numerous hours at his own expense and receiving collect calls from this defendant at his expense, Mr. Handzlik's expense, the attorney's expense. He also put in post-trial motions on behalf of this defendant, which the defendant doesn't seem to appreciate, and then calls him ineffective.

Well, just because you didn't win, Mr. Donn, doesn't mean that he was ineffective. It just means that you didn't have the material for him to win for you. And you admitted it. You admitted you were guilty.

THE DEFENDANT: I pled guilty.

THE COURT: You admitted under oath you were guilty.

THE DEFENDANT: Hey, I—

THE COURT: Now, will you be quiet? I gave you your chance to talk.

It's my chance now. You admitted under oath that you were guilty.

THE DEFENDANT: I pled guilty from the beginning.

THE COURT: Yes, I—

THE DEFENDANT: The FBI—

THE COURT: —I know.

THE DEFENDANT: —questioned—

THE COURT: Will you be quiet? Or I'll give you a contempt term of another six months. What do you think of that? I think I'll do it: In contempt, six months in addition to the prior. And put it down in the minute order, Mr. Clerk.

And you just be quiet. If you don't understand that: Shut up. I hope you understand that. That's street talk enough. Just don't interrupt me again, because if you do, I will give you another six months for contempt.

Going back to my findings, as I said, I find the defendant is a contemptible liar and perjurer. I find that he has deliberately lied about a number of things here, which are clear on the record.

I find that there is a misleading statement in the probation report to the point that he allegedly pled guilty to one count of possession of dangerous drugs, but I didn't consider that at all in the sentencing. And the sentencing transcript, Mr. Clerk, we will mark that as another exhibit, the final exhibit, Exhibit 10, so it will all get up there before the Court of Appeals. Let it all hang out up there.

The sentencing transcript makes it absolutely clear that I did not rely on that at all. As I said, after Mr. Handzlik made his plea for Mr. Donn, that I took into consideration a couple of things, going to page 8 of this transcript, Exhibit 10. One is that the charge was robbery without a dangerous weapon, and I wanted to be sure of that. I looked back at the charge, and Mr. Handzlik assured me, and I found out that was correct, that he didn't have a gun or a dangerous weapon with him. "The second thing is that, while he started off with a jury trial—" which we did and it was held with Mr. Handzlik representing him. Talking about effective assistance of counsel, I don't know how any counsel could be more effective than in representing him in picking the jury and starting a jury trial. And then he decided he wanted to plead guilty. He didn't want to face a jury. So I said: "The second thing, while he started out with a jury trial, he didn't take the stand and eventually he pled guilty; he didn't perjure himself. I take his change of plea to guilty as an indication of his contrition at having committed the offense." How wrong I was. "At least he recognizes he did wrong—" How wrong I was "—and I am taking that into consideration." And those were the two things upon which I based my sentencing. I also said that he should get some treatment, because as I read his confession, he said he had been "stoned," as though he were using dope, and he said he had been drinking wine, and I said: "Well, he's either got a drug or alcoholic addiction and I'm going to see that he gets some treatment." Now, all we can do is recommend, and I know that, to the Parole Commission, but I in this case ordered it on the theory that the Parole Commission might listen to me. They don't have to, and half the time or three-quarters of the time, they don't bother listening to me. They make their own decisions on when they will release a man from parole or whether or not they will give him, as a matter of fact, treatment for drug or alcoholic addiction. Then Mr. O'Neill said that I could give a contempt citation. Mr. O'Neill said that on page 9, that I could issue a contempt citation against the Parole Commission. Well, that's not possible. And I said I would not only sentence him, but I'd give him a B number and I'd only give him eight years because the burglaries had shown—I didn't even talk about any drug conviction. I didn't rely on it one whit. I don't think I even noticed it, as a matter of fact, any more than Mr. Handzlik noticed it. Although Mr. O'Neill talked about drug conviction, I didn't even consider it, and I think the record is absolutely

clear. I didn't consider his education or his lack of it or his graduation or his lack of a job. I only considered whether or not he robbed that bank and did he do it with a gun or without a gun, and I found that he did it without a gun, or at least that's the way he was charged. That's the way the evidence appeared in the FBI reports and in his own confession. I asked him in his own words at the time of the plea of guilty how he did it, what he did, and he told us. As we know, it was scribbling that he gave them and then he handed them a bag and told them to put the money in it. He admitted that under oath. Now he's trying to get out of it.

The legal conclusion is inescapable from these findings of fact: That the defendant not only had effective assistance of counsel, but assistance of counsel way beyond the call of duty of a defense counsel, way beyond it. His counsel gave him a copy of the report. He had a chance to read it. He had a chance to rebut anything in it. I always give every defendant that chance. And he was told anything that was false or improper or misleading, tell his attorney. He didn't do it. He didn't mention it to the Court. Now, if he didn't read it, it's his own fault. If he did read it, it's still his own fault for not bringing it to the attention of the Court.

In any event, the legal conclusion is inescapable, inescapable and overwhelming and conclusive beyond any peradventure of a doubt, certainly beyond any reasonable doubt, but beyond any peradventure, any possibility of a doubt that he received effective assistance of counsel not only at the time of his plea of guilty, if that is a part of the decision, which is difficult to determine, but at the time of the sentencing, in that he was shown his presentence report. He had an opportunity to read it. If he didn't read it, it's his fault. If he did read it, he could have raised the question of alleged impropriety or misleading character of the plea of guilty, alleged plea of guilty to possession of dangerous drugs. But in any event, I didn't rely on that or upon his alleged work with VTS or his alleged graduation from high school.

So concluding, there was no lack of effective assistance of counsel. Counsel was absolutely effective.

Number two, I didn't rely on anything that was misleading or untrue in the report. So ordered. If counsel for the government desires to prepare an order— but I don't think it's necessary. Just prepare a minute order, Mr. Clerk.

THE CLERK: Yes, your Honor.

THE COURT: Because I'd rather have them get my reasoning than the lawyer's rhetoric, as they often say lately in some of their opinions. Again, absolute nonsense, if the Court adopts it. But I hope that you get it correct. I want to see those minutes when you put them out so they correctly state what I have just said.

THE CLERK: Yes, your Honor.

THE COURT: At any rate, what I just said shall constitute my findings and conclusions of law. The minute order need only simply read that the evidentiary hearing was held, that the Court found that the defendant had effective assistance of counsel beyond any peradventure of a doubt, certainly beyond any reasonable doubt, beyond any possibility of a doubt, very, very effective counsel and excellent counsel, first-class counsel. Any attempt to show otherwise is a defamation, in my view, of this counsel. It smacks of libel. It's untrue. It's unjust, unfair. Even the decision is unfair in that regard in my view. Mr. Handzlik is a top-notch lawyer, and for anybody to argue otherwise, whether it be Mr. Mink or whoever wrote this opinion, be it some law clerk whose draft was adopted by the Court—it says per curiam. Who knows who wrote this. Some of us who have been up there know who write them. It's the law clerks, the clerks. They certainly write the first drafts. But in any event, it's false to say that Mr. Handzlik was ineffective. He was very effective. He is a top-notch lawyer. In any event, if there was anything misleading in the probation and sentence report, I did not rely on it. Let's see what they say in the opinion so we get it absolutely right.

(Brief pause in the proceedings.)

THE COURT: Upon this evidentiary hearing, I find that Donn's claim of ineffective assistance of counsel is false, incorrect, untrue. On the contrary, that Mr. Handzlik's representation was the most effective that any counsel could give, by a very knowledgeable and very able counsel for the defense, one who has always abided strictly by the rules of ethics governing lawyers, one who never himself maligned or defamed another lawyer, and I think any statement that he was ineffective here is an absolute defamation, an untruth, a falsehood. It's something that no court should tolerate, whether it's a district court or an appellate court. It's absolutely intolerable in light of all the facts.

When this is drawn up, Miss Reporter, make sure that it is attached to whatever goes up to the Court of Appeals, that all these exhibits are attached, ten exhibits. I order that the transcript be sent with your note, Miss Reporter, to the Court of Appeals, attention of Choy, Kashiwa, and Norris as constituting my evidentiary hearing and findings and conclusions made as a result thereof and adding that the Court—I will say it now. If the Court of Appeals wants anything more, let us know, but hopefully a little more clearly than this last time. So ordered. We will stand in adjournment. The defendant is committed forthwith. All right. We are in recess.

(Brief pause.)

THE COURT: What is attempted to have been said here about Mr. Handzlik not only is a falsehood and untruth, but it is intolerable in any court of law, and I blame Mr. Mink as an attorney and counselor at law for permitting this sort of thing to happen. It should never happen to anybody of the reputation and ability of Mr. Handzlik or in any court of law, let alone this one, which has seen Mr. Handzlik operate many, many times here, always within the bounds of ethics and never exceeding them, as I think were exceeded here. All right.

(The following proceedings were had at 11:00 a.m. on January 26, 1982. Present were Patricia H. Cullison, law clerk; Joe Levario, court clerk; Elaine J. Cohen, official court reporter:)

THE COURT: I want to add the following to the transcript and the minutes:

Now that I have held the evidentiary hearing pursuant to decision and mandate of Court of Appeals, Ninth Circuit, case No. 80–5616, dated November 19, 1981, the district court judgment herein of January 15, 1979, vacated by said decision and mandate of Court of Appeals, Ninth Circuit, is hereby reinstated in toto by reason of aforesaid evidentiary hearing, findings and conclusions.

## REPORTER'S CERTIFICATE

I, ELAINE J. COHEN, hereby certify that I am a duly appointed, qualified and acting official court reporter for the United States District Court, Central District of California.

I further certify that the foregoing 111 pages comprise a true and correct transcript of the proceedings had in the above-entitled cause on January 25, 1982 and January 26, 1982, and that said transcript is a true and correct transcription of my stenographic notes.

Dated at Los Angeles, California, this 5th day of February, 1982.

/s/ Elaine J. Cohen
Official Reporter

MADE AND ADOPTED AS ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW, AS ORDERED BY THE COURT.

DATED: February 5, 1982

Nunc pro tunc as of January 25, 1982.

/s/ A. Andrew Hauk

A. ANDREW HAUK
CHIEF JUDGE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | CR78-1028-AAH | Judge | A. ANDREW HAUK |
|---|---|---|---|

**FILED**

**JAN 25 1982**

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Title: U.S.A.
vs
Aron Edward Donn

Dates of Trial: JAN 25 1982
Evidentiary hearing on mandate of Court of Appeals

Court Reporters: Elaine Cohen

Deputy Clerk: Josephin M. Ferreria

| Attorneys for Pltf-Libelnt | Attorneys for Dft-Respdt |
|---|---|
| John D. Robertson, AUSA | Michael S. Mink |

| Pltf-Libelnt Ex. No. | Dft-Respdt Ex. No. | EXHIBITS JAN 25 1982 WITNESSES | Called by |
|---|---|---|---|
| | | Chris Newlander | Court |
| | | Jan Lawrence Hawiyčik | Court |
| 1 1/25 1/25 | | FBI Report | |
| | | Aron Edward Donn | Court |
| 2 1/25 1/25 | | Pre-Sentence Report of Aron Edward Donn | |
| 3 1/25 1/25 | | Notes on yellow-sheet of paper | |
| 2 1/25 1/25 | | Correspondence between A.E. Donn & J. Hawiylik | |
| 3 1/25 1/25 | | Notice of Motion & motion for Reduction of Sentence in CR78-1028 | |
| 4 1/25 1/25 | | Supplemental Declaration in support of motion for Reduction of Sentence in CR78-1028 | |
| | | William G. Hutson | Court |
| 5 1/25 1/25 | | | |
| 6 1/25 1/25 | | Copy of Judgment #A120130/A1206094 | |
| 5 1/25 1/65 | | Copy of High School Transcript (3 pages) | |

R 75 (12/76)

564

| Case No. CR78-1028-AAH | Title U.S.A. -V- Aron Edward Dann |

| Plf-Libeint | | | Dft-Respdt | | | EXHIBITS | WITNESSES | Called by |
|---|---|---|---|---|---|---|---|---|
| x. No. | id | ev. | Ex. No. | id. | ev. | | | |
| Exhibit I 10 | 1/25 | 1/25 | | | | Reporters Transcript of Proceedings 1/15/79 | | |
| | | | | | | | FILED | |
| | | | | | | | JAN 25 1982 | |
| | | | | | | | CLERK, U.S. DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA BY DEPUTY | |

FD-302 (Rev. 11-27-70)

# EXHIBIT 1

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription ___10/31/78___

ARON EDWARD DONN, 13409 Desmond, Pacoima, California, was contacted at the Los Angeles Police Department (LAPD) Jail, 150 North Los Angeles Street, Los Angeles, California, where he was being held on robbery charges. DONN was advised of the identities of SA DONALD L. MC MULLEN, Federal Bureau of Investigation, and Detective ROBERT DURETTO, LAPD, and he was further advised that the purpose of the interview was to discuss the robbery of the Bank of America, 7060 Sepulveda Boulevard, Van Nuys, California, which occurred on October 11, 1978. Before any questions were asked of DONN, he was advised of his rights as outlined on a form entitled, "Interrogation; Advice of Rights, Your Rights" by SA MC MULLEN and DONN was further allowed to read this form. DONN expressed his understanding of these rights and his desire to waive these rights and he acknowledged this understanding and this desire by signing the waiver portion of the form.

After having completed the above, DONN advised that he knew nothing concerning the robbery of the Bank of America on October 11, 1978, or any other robberies. A series of surveillance photographs taken during the robbery were then placed in front of DONN and he was asked to view these photographs and to respond in any way he felt appropriate. After viewing the photograph silently for several minutes, DONN leaned back in his chair and advised that his wife received slightly over $100 a month from her employment and that he had been unable to obtain employment despite intensive effort due to his criminal record. He advised that this condition had caused him considerable worry and that on the day of the robbery (he pointed at the surveillance pictures as he referred to the robbery), he had been drinking wine and was "stoned". He advised he recalls driving around looking for a bank to rob, however, he does not recall exactly how he selected the bank shown in the photographs. He further advised he does not clearly recall the name of the bank nor its specific location. He advised that he does recall the events depicted in the surveillance photographs and he advised that the person depicted in those surveillance photographs who is walking from the bank with a paper bag in his hands is definitely himself. He recalls he approached

Interviewed on ___10/26/78___ at ___Los Angeles, California___ File # ___LA 91-20269___

by ___SA DONALD L. MC MULLEN/njs___ Date dictated ___10/28/78___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency. FBI/DOJ

the teller (who is shown nearest to the camera in the surveillance photographs) and held up a piece of paper with scribbling on it. He advised he does not believe the scribbling spelled any specific word or words. He advised he recalls making an oral demand for money and believes the words he used included the phrase, "Give me the money".

He advised he does not recall the exact amount of money he obtained, however, is certain that it was under $1,000.

DONN denied that anyone else assisted him with the robbery and he further denied having possessed a weapon during the commission of the robbery.

He advised he does not recall what happened to the note he used during the robbery and he does not know the current whereabouts of the shirt which he wore during the robbery.

DONN further advised that he is still not certain why he committed the robbery and he explained that he has asked himself that question on numerous occasions since the day of the robbery. He emphasized this was the only bank robbery or any other kind of robbery he has committed since being released from California Institute for Men at Chino, California.

In addition to the above information, the following descriptive information was obtained through observation and interview:

| | |
|---|---|
| Name | ARON EDWARD DONN |
| Nickname | Peanuts |
| Sex | Male |
| Race | Negro |
| Date of Birth | November 18, 1951 |
| Place of Birth | Los Angeles, California |
| Height | 5'5" |
| Weight | 160 |
| Build | Very muscular |
| Hair | Black |
| Eyes | Brown |
| Miscellaneous | Pierced left ear |
| Address | 13409 Desmond |
| | Pacoima, California |

 (page) 

## EXHIBIT 2

### UNITED STATES DISTRICT COURT
### Los Angeles, California
### PRESENTENCE REPORT

| NAME (Last, First, Middle) | | DATE |
|---|---|---|
| DONN, Aron Edward | | January 15, 1979 |

| ADDRESS | LEGAL ADDRESS | DOCKET NO. |
|---|---|---|
| Los Angeles County Jail<br>Bauchet Street<br>Los Angeles, California<br>Module 5600 | Transient | 78-1028 |
| | | RACE: Negro |
| | | CITIZENSHIP: United States |

| AGE | DATE OF BIRTH | PLACE OF BIRTH | SEX | EDUCATION |
|---|---|---|---|---|
| 27 | 11-18-51 | Los Angeles, Ca. | Male | 12 years |

| MARITAL STATUS | DEPENDENTS | |
|---|---|---|
| Single | None | |

| SOC. SEC. NO. | FBI NO. | OTHER IDENTIFYING NO. |
|---|---|---|
| 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 | 181 618 G | CII 3 276 967 |

**OFFENSE**

18 USC 2113(a): Robbery of Bank.

**PENALTY**

$5,000 and/or 20 years.

**CUSTODIAL STATUS**

82 days

**PLEA**

Guilty, 12-19-78.

**VERDICT**

**DETAINERS OR CHARGES PENDING**

California Department of Corrections Hold.

**OTHER DEFENDANTS**

None.

| ASSISTANT U.S. ATTORNEY | DEFENSE COUNSEL |
|---|---|
| | Jan Handzlik<br>1900 Avenue of the Stars<br>Los Angeles, California 90067<br>Telephone: (213) 553-3610 |

**DISPOSITION**

USPO Hutson, Ext. 3619
SUSPO McLean, Ext. 3611

| SENTENCING JUDGE | DATE |
|---|---|
| HONORABLE A. ANDREW HAUK | |

OFFENSE:

Official Version. On December 19, 1978, Aron Edward Donn pleaded Guilty to a 1-Count Indictment. The Indictment charges that on or about October 11, 1978, within the Central District of California, Aron Edward Donn, by force, took from a victim teller, $453 which belonged to the Bank of America, 7060 Sepulveda Boulevard, Van Nuys, California.

Federal Bureau of Investigation (FBI) agents were notified by telephone at 12:30 p.m. on October 11, 1978, that the Bank of America, 7060 Sepulveda Boulevard, Van Nuys, California, had been robbed. The victim teller told a FBI agent that the perpetrator handed her a piece of paper with "robbery" written on it and told her to put money in the paper bag which he had in his hand. The robber then exited the bank while surveillance cameras were active.

Copies of the surveillance photograph were distributed throughout Southern California. Several days later, FBI agents were contacted by a Los Angeles Police Department (LAPD) officer, indicating that he believed Aron Edward Donn was the subject in the photograph. Based on that observation, Aron Edward Donn was placed under arrest.

Aron Edward Donn's Parole Officer was also shown a surveillance photograph, and he identified Aron Donn as his parolee and as the subject who was in the photograph.

Defendant's Version. Aron Edward Donn stated that his motive for the Bank Robbery was that he was broke, just out of the State institution, things at home were tense due to lack of money to pay rent, he was looking for jobs but could not obtain any because he was an ex-offender, and the local authorities had run out of Comprehensive Employment Training Act (CETA) funds.

PRIOR RECORD:

The following agencies were contacted: the Federal Bureau of Investigation (FBI), the California Bureau of Criminal Identification and Information (CII), the Los Angeles Police Department (LAPD), the Los Angeles County Sheriff's Office (LASO), the Los Angeles County Probation Department, the Los Angeles County Superior Court files, and the California Department of Corrections Cumulative Case Summary Division.

Juvenile Adjudications

| Date | Offense | Place | Disposition |
|------|---------|-------|-------------|
| 10-3-65 (age 13) | Petty Theft | Los Angeles, California | Counseled then released. |

It was not determined whether the defendant was represented by counsel.

| | | | |
|------|---------|-------|-------------|
| 6-5-67 (age 15) | 602 WIC; 459 PC (Burglary) | Los Angeles, California | Placed home on probation. |

It is not known if the defendant was represented by counsel.

| 11-13-67<br>(age 15) | 602 WIC;<br>10851 VC<br>(Joyriding) | Los Angeles,<br>California | 12-26-67, placement<br>at Camp Scudder by<br>the Juvenile Court. |

Aron Edward Donn was placed in a Forestry Camp Program;
however, he was removed from the camp four days later at
his own request and was committed to the California Youth
Authority (CYA) where he was paroled on September 24, 1968.

It was not determined whether the defendant was represented
by counsel.

### Adult

| 11-24-69 | Tampering<br>With a<br>Vehicle | Los Angeles,<br>California | 10 days County Jail;<br>3 days suspended. |

On this occasion, Aron Edward Donn was using a screwdriver
to break into a truck when the owner of the truck approached.
Donn then fled but was later arrested and his wallet and
identification were found on the floor of the truck.

It was not determined whether the defendant was represented
by counsel.

| 12-3-69 | Plain<br>Drunk | Los Angeles,<br>California | 12-31-69,<br>Plea of Nolo Contendere,<br>30 days suspended. |

It was not determined whether the defendant was represented
by counsel.

| 12-14-69 | Shoplifting | Los Angeles,<br>California | 30 days in County Jail. |

Aron Edward Donn put on two coats at a White Front Department
Store in Pacoima and was stopped as he attempted to leave
without paying.

It was not determined whether the defendant was represented
by counsel.

| 1-20-70 | Burglary | Los Angeles,<br>California | Case No. A111478,<br>Los Angeles County<br>Superior Court; committed<br>to the CYA on 2-26-70<br>and paroled on<br>12-17-70. |

Police investigation revealed that the front glass door
had been broken at a furniture store, and Aron Edward Donn
was observed crawling on the floor inside the building.
He had come into an office area and removed coins from a
desk drawer and also admitted burglarizing a nearby barber-
shop.

Aron Edward Donn was represented by counsel.

| 8-7-71 | Failure to<br>Disperse | Los Angeles,<br>California | Suspended sentence,<br>1 year summary<br>probation, $20 fine or<br>2 days. |

Officers went to a Disturbing the Peace call and observed many people, including Aron Edward Donn, at the party. Donn was arrested when he did not obey orders to disperse.

It was not determined whether the defendant was represented by counsel.

| 11-22-71 | Possession of Dangerous Drugs; Burglary (1 Count) | Los Angeles, California | Los Angeles County Superior Court, Information A120094, consolidate with Information A120136, pleaded Guilty to 1 Count of Possession of Dangerous Drugs, and 1 Count of Burglary, sentenced to State Prison pursuant to Section 1202(b) of the Ca. Penal Code. |

In this matter, Aron Edward Donn was initially arrested for Possession of Dangerous Drugs, then later was charged with 3 Counts of Burglary which were consolidated. The defendant had been stopped for driving erratically, and a search of his vehicle revealed 700 barbiturate capsules. So far as the burglaries were concerned, Aron Edward Donn apparently broke the glass in the front door of a garage and ransacked the area and then broke through a wall to the next-door business, taking jewelry from a display counter and drugs from the pharmacy section. He also took a small coin-operated stamp machine.

Aron Edward Donn was represented by counsel. He was paroled on August 28, 1975.

| 12-9-75 | Burglary | Los Angeles, California | Information A134737, convicted by a Jury, sentenced to State Prison. |

Aron Edward Donn was arrested by officers of the LAPD on December 9, 1975, and booked for violation of 459 PC (Burglary). The Burglary was perpetrated at a beauty salon in Pacoima. Missing were beauty supplies, money from the Coke machine, and 34 costume jewelry rings. Fingerprints were lifted, and they matched those of Aron Edward Donn.

Aron Edward Donn was represented by counsel.

| 3-26-76 | Burglary | Los Angeles, California | 9-24-76, Dept. Northwest M Information A135194, plea of Guilty, proceeding suspended, 5 years unsupervised probation, condition of 1 year in County Jail concurrent with the State Prison sentence in Information A134737. |

This burglary was the result of a forced entry into a market where the defendant was arrested on the scene.

Aron Edward Donn was paroled to Los Angeles County on
April 26, 1978, and was supervised out of the State Parole
Office in Eagle Rock, California. As a result of his arrest
for Bank Robbery, he was administratively found in violation
of parole by the Community Release Board of the State of
California and was recommitted to prison for a term of six
months which he is currently serving. Judge Hughes of
Department N.W.M was informed of the Federal conviction for
possible Court action.

PERSONAL AND FAMILY DATA:

Aron Edward Donn is the youngest of five offspring born
in Los Angeles, California, to Ferdig and Million Donn.
He grew up in a high-crime-rate and culturally deprived
area of the San Fernando Valley, attending school until
the age of 17, when he dropped out. His school adjustment
was extremely poor, and he had serious academic difficulties.
He failed most classes and had unsatifactory citizenship
grades. He was in continuous conflict with the law as a
juvenile and ultimately was committed to the California
Youth Authority (CYA).

Aron Edward Donn has never been married; however, records
indicate that he fathered one child as a result of a common-
law relationship. While on parole, he was living with a
common-law wife in the Pacoima area.

The defendant is 5'4" tall and weighs 150 pounds. He denies
the use of narcotics; however, he states that he uses
phencyclidine (PCP) occasionally. On the occasion of the
bank robbery, he claims that he was "dusted on PCP." A
psychological evaluation of Aron Edward Donn was prepared
by the California Department of Corrections as a result
of a 90-day diagnostic study ordered by the Los Angeles
County Superior Court in 1972. A copy of this psychological
evaluation is attached to the Presentence Report to assist
the Court in an evaluation of Aron Edward Donn.

EVALUATION:

Aron Edward Donn has a hostile, belligerent attitude
exemplified by his long-term behavior in the community
and currently while in custody. For example, at the time
of the probation interview in the County Jail, the defendant
intentionally absented himself from the noontime meal and
"got lost" in the County Jail, forcing the Probation Officer
to wait approximately two hours until he could be found.
During the probation interview, Donn was surly and manipulative.
Born in 1951, it seems irrelevant to blame ghetto associations
and poor family life for continued behavior of an antisocial
type in 1978. Aron Donn's Parole Agent stated to the
Probation Officer that it was not because he (Donn) was a
parolee that he was unable to obtain work; on the other hand,
it was because of his "arrogance." Perhaps the disposition
of this matter in the Federal Court will place Aron Edward
Donn in the position where he will begin to make some
attempts at behavior modification through a change of
attitudes and values.

Alternative Plans. Adult sentencing provisions apply in
this case. Under any sentence imposed, Mr. Aron Edward Donn
will eventually come under supervision of the Probation Office.
If the Court places Mr. Donn on probation, a supervision plan

would have to include the maintenance of work, a monitoring of his residence away from the Pacoima area, numerous personal contacts and counseling sessions.

RECOMMENDATION:

The Probation Officer does not believe that Aron Edward Donn is amenable to a grant of probation.

Respectfully submitted,

ROBERT M. LATTA
Chief U. S. Probation Officer

*William G Hutson*

WILLIAM G. HUTSON
U. S. Probation Officer

WGH:mb
1-8/9-79

*needs education & vocational training; psychological counseling*

## SENTENCING DATA

Offense of Conviction: 18 USC 2113(a): Robbery of Bank

### SENTENCING AVERAGES

#### (Fiscal Year 1977)

General Offense Category: Bank Robbery

| | Total Sentenced | % Prob. | % Split | % Incar. | % Fine Only | Average Length of Sentence |
|---|---|---|---|---|---|---|
| NATL. | 1910 | 8 | 2 | 90 | - | 11 years, 2 months |
| CD/CA | 227 | 7 | 5 | 88 | - | 8 years, 3 months |

(Sentencing averages obtained from the Statistical Analysis and Reports Division of the Administrative Office of the United States Courts.)

### SALIENT FACTOR

Score : 2 (poor)

Offense Severity : Very high

Expected Time to Serve: 60 to 72 months

(The Salient Factor Score is based on information which is presently available. It may vary from the U. S. Parole Commission's eventual computation.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CV 80-2729 AAH CRIMINAL MINUTES — GENERAL
CR 78-1028 AAH
Case No. (CA 80-5616) Date ___Jan. 25, 1982___

DOCKET ENTRY:

MINUTE ORDER

PRESENT: HON. _____A. Andrew Hauk_____, JUDGE

Joseph M. Levario Elaine Cohen JohnD. Robertson
Deputy Clerk Court Reporter Asst. U. S. Attorney

| U. S. A. v. (DEFENDANTS LISTED BELOW) | ATTORNEYS FOR DEFENDANTS |
|---|---|
| (1) Aron Edward Donn | (1) Michael S. Mink |
| ____ present ____ custody ____ bond ____ O/R | ____ present .... appointed ..... retained |
| (2) | (2) |
| ____ present ____ custody ____ bond ____ O/R | ____ present ... appointed ..... retained |
| (3) | (3) |
| ____ present ____ custody ____ bond ____ O/R | ... present . .. appointed ..... retained |
| (4) | (4) |
| ___ present ____ custody ____ bond ____ O/R | ____ present ____ appointed ..... retained |

PROCEEDINGS: Hearing for filing and spreading Mandate and Decision USCA
affirming judgment USDC in part, and reversing and remanding
in part, and for evidentiary hearing pursuant to mandate.

Order Mandate and Decision filed and spread. An evidentiary hearing was held
pursuant to decision and mandate of United States Court of Appeals, 9th
Circuit, Case No. 80-5616, dated November 19, 1981. Witnesses were called
and exhibits marked and admitted into evidence. The Court made findings of fact,
conclusions of law and ordered: (1) The judgment of this Court for the Central
District of California, CR 78-1028, heretofore entered on January 15, 1979,
which was vacated by the Court of Appeals, 9th Circuit on November 19, 1981,
No. 80-5616, be reinstated in toto as of January 15, 1979: (2) Finding
concluding and holding defendant Donn in contempt of Court, the Court thereupon
ordered him committed to the custody of the Attorney General or his authorized
representative for imprisonment for a period of six months, the sentence to
be and run consecutively to the sentence the defendant is now serving.
Filed Mandate & Decision of U.S. Court of Appeals, 9th Circuit. (Ent _____)
Filed judgment and commitment (Ent _____)

Edward M. Kritzman, Clerk

By: _Joseph M. Levario_, Deputy
Joseph M. Levario, Depary

Signed February 4, 1982, nunc pro tunc
as of January 25, 1982

A. Andrew Hauk, Chief U.S. District
Judge

MINUTES FORM 6
CRIM — GEN D — M Initials of Deputy Clerk _____

574

EXHIBIT 3

18 U.S.C § 3501 (c) ; Rule 5 (a), F.R.Crim.P.

US v. Edwards, 539 F.2d 689 (9th 1976)
cert denied 429 U.S. 984

- delay is factor to be consid
- here, shortage of personnel and vehicles nearest US Mag 125 miles
- no oppressive police practice

"working relationships" US v. Arcediano 371 FS 457 (D.N.J. 1974)

McNabb - Mallory : Q voluntariness

US v. Halbert
US v. Mandley 502 F.2d 1103 (9th Cir. 1974)
- 19 days, 4 d. FBI

US v. Leonard, 455 F.2d 949 (9th 1972)
- time runs from state arrest
951 - 9th Cir : prior st. cust may be taken into account in determining
- 9/12 : state, notify ATF 9/14

US v. Stage, 464 F.2d 1057 (9th )
- 5 days - readily avail. mag. - questioning by fed agents
- delay unreasonable

US v. Butcher

Dorin P/S

prior record: marked by amatuerish behavior
— caught in truck — vehicle tamper
— two coats on — petty theft
— burg '70 — broke window, crawling
— burg '71 — same thing
— burg '75 — beauty parlor — coins
— burg '76 — arrested on scene mkt
— prob. revoc. over head; parole vio

no violence, no force — bungled breakins

Common law relation — one child

offense out of character
— hostile, belligerent, surly, arrogant
— change attitudes through
behav. mod.

4205 (b)(2)

EXHIBIT 4

RECEIVED

MAY 10 197.

Stilz. Boyd, Lavire & Handzlik

Dear Mr.Handzlik:

 Inclose is a copy of my classification report,this is the only copy of any progress,my case worker refuses to give me any type of memo.
 My family contacts are as follow,Ms Million Armstrong Mot.er phone 732-0564. Father Ferged Donn 8969128,Sister Milde Wiley 899-2706 or 896-2706,Sister Bertha Bundy 899-1726. My girl friend Alyce Mann 8960372.

 This is all the information I have.

*[handwritten notes:]*
Ferdeg
Million mother
Bertha Bundy - sister Respectfully
Millie Wiley - sister
Alice Mann - friend

221-2202

RECEIVED

MAY 1 1979

Stilz, Boyd, Levine & Handzlik

Mr Jan Lawrence Handzlik
Two Century Plaza,Suite 12oo
2040 Century Park East
Los Angles,California. 90067

Dear Mr. Handzlik:

 I was designated to F.C.I Englewwod under the presumpton that a California Parole hold was still being loged against me acting as a detainer that up my security level to a number three institution.
 I recaived a discharge from the state of california,I was officially discharge on Feb,2,1979. the discharge notice was send to the F.B.I but were not forward to the F.B.P if this information would have been forward I would have been designated to terminal island.because my security face sheet would have designated me to a level to institution,seeing that my discharge notice was not forward to the F.B.P by the F.B.I they had no notice that I was discharge from parole.
 I would highly appreciate if you could go back to the ferderal bureau of prison or the court to try to have me sent to terminal island I would like to be somewhat closer to my family,it is somewhat hard for me to keep close contact with them unless by mail thank you.

 Respectfully,

 Aron Edward Donn

E OF CALIFORNIA—HEALTH AND WELFARE AGENCY EDMUND G. BROWN JR., Governor

ATMENT OF CORRECTIONS
ROLE AND COMMUNITY SERVICES DIVISION
 West Colorado Blvd.
 Angeles, California 90041
 phone: (213)254-9251

April 20, 1979

Federal Correctional Institution
Box PMB 1000
Englewood, Colorado 80110
Attn: Records Office

 Re: Donn, Aron
 Discharged parolee

Dear Sir:

Enclosed is a copy of the vote sheet from the State Community
Release Board discharging Aron Donn effective 2-9-79.

If any further information is required, please call or write
to 969 West Colorado Blvd., Los Angeles, California 90041,
phone (213)254-9251.

 Very truly yours,

 Frank Marino
 Parole Agent II
 Eagle Rock Parole Office

FM:krh
cc: Aron Donn

STATE OF CALIFORNIA

OFFICE CALENDAR DECISION

CRH

## 1. REPORTS REVIEWED

PAROLE VIOLATION REPORT OF _____ REVIEWED

E. PSYCHIATRIC REPORT OF _____ REVIEWED

PAROLE SUMMARY REPORT (PSR) OF _____ REVIEWED

F. DISCHARGE REPORT OF 1-24-79 _____ REVIEWED

SUPPLEMENTAL PAROLE VIOLATION REPORT OF _____ REVIEWED

DISCIPLINARY REPORT OF _____ REVIEWED

G. OTHER _____ REPORT OF _____ REVIEWED
DATE)

## 2. PAROLE STATUS

PAROLE SUSPENDED

CONTINUE ON PAROLE

C. REINSTATE ON PAROLE EFFECTIVE _____ (DATE)

D. OTHER _____

## 3. SCHEDULE FOR FURTHER PROCEEDINGS

SCHEDULE FOR REVOCATION PROCEEDINGS

SCHEDULE FOR PLACEMENT PROCEEDINGS

☐ CSTCU ii ☐ PSYCHIATRIC

C. SCHEDULE FOR PREREVOCATION PROCEEDINGS

D. SCHEDULE FOR RESCISSION PROCEEDINGS

E. RETURN TO PRISON FOR FURTHER PROCEEDINGS

## 4. OTHER DECISIONS

HOLD

☐ RETAIN ii ☐ PLACE iii ☐ REMOVE

REAFFIRM ACTION OF _____ (DATE)

C. TERM(S) REFIXED TO DISCHARGE EFFECTIVE
2 - 9 - 79
(DATE)
i ☒ PER CRB §2536(b) ii ☐ PER CRB §2713(c)

D. MISCELLANEOUS
DISCHARGED TO ALLOW _Federal_
AUTHORITIES EXCLUSIVE JURISDICTION

## PANEL HEARING CASE

O. Brown

V Moore

| | NUMBER | INSTITUTION/REGION | UNIT | DECISION DATE |
|---|---|---|---|---|
| | D 41610-2 | J11 | | FFR 2 1979 |

STILZ, BOYD, LEVINE & HANDZLIK

ATTORNEYS AT LAW

RICHARD A. STILZ
EARL E. BOYD
JOEL LEVINE
JAN LAWRENCE HANDZLIK

TWO CENTURY PLAZA, SUITE 1200
2049 CENTURY PARK EAST
LOS ANGELES, CALIFORNIA 90067

(213) 277-6844
(213) 879-0662

CABLE ADDRESS: HANDLAW

April 13, 1979

Mr. Aron Donn
Federal Correctional Institution
Box P.M.B. 1000
Englewood, Colorado 80110

Re: United States v. Aron Donn

Dear Mr. Donn:

This is in response to your letter which I received today.

As I explained to you earlier, I will file your Rule 35 Motion to Reduce Sentence for you. It will be filed before May 10, 1979, the date it is due.

Your conduct while in prison should be called to the Court's attention. Send copies to me of any progress reports, evaluations, memos from your case managers, etc., that they will let you have copies of. I will attach them to the motion.

I will shoot for a reduction to five years so that you can be returned to California. As I told you, the length of your sentence no longer fully determines the prison that you will be sent to.

Send me information about your family contacts in this area.

Sincerely,

JLH/jl

JAN LAWRENCE HANDZLIK

RECEIVED

APR 12 197

Stilz, Boyd, Levine & Handzlik

Mr Aron Donn
Box P.M.B 1000
Englewood, Colorado. 80110

Dear Mr Handzlik,

Am conveying this missive to in concern to who will take legal action of petitioning the courts for a motion of reduce my sentence, I am somewhat bewilder, I have 120 days to file for a motion of having my sentence modify, I want to no if you are going to take action or do you what me to do it, I thank that it would be best if you would take the necessary procedures to petition the court.

Respectfully

Mr Aron Donn

**580**

EXHIBIT 5

(SPACE BELOW FOR FILING STAMP ONLY)

STILZ, BOYD, LEVINE & HANDZLIK
ATTORNEYS AT LAW
TWO CENTURY PLAZA
2049 CENTURY PARK EAST, SUITE 1200
LOS ANGELES, CALIFORNIA 90067
(213) 277-6844 OR 879-0662

FILED

Attorneys for___Defendant_____
ARON EDWARD DONN

MAY 9 3 18 PM '79

CLERK U.S. ~~~~ ~~ ~ ~~ COURT
CENTRAL DIST OF CALIF.
BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 78-1028-AAH |
| | ) | |
| Plaintiff, | ) | NOTICE OF MOTION FOR REDUCTION |
| | ) | OF SENTENCE |
| v. | ) | |
| | ) | |
| ARON EDWARD DONN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

TO THE UNITED STATES OF AMERICA AND TO THE UNITED STATES ATTORNEY, PLEASE TAKE NOTICE THAT:

On May 29, 1979, at 1:30 p.m. or as soon thereafter as the matter may be heard, in the courtroom of United States District Judge A. Andrew Hauk, defendant Aron Edward Donn will move for an Order of the Court reducing his sentence from eight years to five years in the custody of the Attorney General.

Respectfully Submitted,

STILZ, BOYD, LEVINE & HANDZLIK

By_____Jan L. Handzlik_____
Jan Lawrence Handzlik
Attorneys for Defendant Aron
Edward Donn

## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF

I, the undersigned, say:

I have read the foregoing _____

_____and know its contents.

### ☒ CHECK APPLICABLE PARAGRAPH

☐ I am a party to this action. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an officer ☐ a partner _____☐ a _____ of _____

a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I am informed and believe and on that ground allege that the matters stated in it are true.

☐ I am one of the attorneys for _____,

a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in· it are true.

Executed on _____, 19 ___, at _____ California.

I declare under penalty of perjury that the foregoing is true and correct.

_____
(Signature)

### ACKNOWLEDGMENT OF RECEIPT OF DOCUMENT
#### (other than summons and complaint)

Received copy of document described as _____

_____

on _____19___.

_____
(Signature)

### PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of ____Los Angeles____, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2049 Century Park East, Suite 1200, Los Angeles, California 90067

On May 8 1979, I served the foregoing document described as NOTICE OF MOTION FOR REDUCTION OF SENTENCE

_____ on the interested party

in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at: Los Angeles, California addressed as follows:

John Robertson, Esq.
Assistant United States Attorney
312 North Spring Street
Los Angeles, California 90012

Executed on May 8 , 19 79 at Los Angeles , California.
(check applicable paragraph below)

☐ (State) I declare under penalty of perjury that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

/s/ Mary Ellen Shipley
(Signature)

MARY ELLEN SHIPLEY

STUART'S EXBROOK TIMESAVER (REVISED 3-77)
(May be used in California State or Federal Courts)

582

STILZ, BOYD, LEVINE & HANDZLIK
ATTORNEYS AT LAW
TWO CENTURY PLAZA
2049 CENTURY PARK EAST, SUITE 1200
LOS ANGELES, CALIFORNIA 90067
(213) 277-6844 OR 879-0662

(SPACE BELOW FOR FILING STAMP ONLY)

FILED

Attorneys for Defendant
ARON EDWARD DONN

MAY 9 3 18 PM '79

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, )
 ) Case No. 78-1028-AAH
 Plaintiff, )
 ) MOTION FOR REDUCTION OF
 v. ) SENTENCE; DECLARATION
 ) OF JAN LAWRENCE HANDZLIK
ARON EDWARD DONN, )
 ) Date: May 29, 1979
 Defendant. ) Time: 1:30 P.M.
 )
_____)

Pursuant to Rule 35, Federal Rules of Criminal Procedure, defendant Aron Edward Donn hereby moves for a reduction of the sentence imposed upon him on January 15, 1979. Defendant Donn is seeking a reduction of the eight year sentence imposed to five years.

This Motion is based upon the following Declaration and upon the records of this case.

Respectfully Submitted,

STILZ, BOYD, LEVINE & HANDZLIK

By _____
 JAN LAWRENCE HANDZLIK
 Attorneys for Defendant Aron
 Edward Donn

## DECLARATION OF JAN LAWRENCE HANDZLIK

I, JAN LAWRENCE HANDZLIK, state:

1. I am the attorney for defendant Aron Edward Donn ("Donn") in this case.

2. On January 15, 1979, Donn was committed to the custody of the Attorney General for a period of eight years.

3. Donn is now incarcerated in the Federal Correctional Institution, Englewood, Colorado. The records of Donn's progress while in Federal custody are available to this Court upon the request of the Court to the Bureau of Prisons.

4. One of the factors taken into consideration by the Bureau of Prisons in designating the institution where a sentence is to be served is the length of the sentence. I am informed and believe that Englewood, Colorado was designated as the place where Donn would serve his sentence due in large part to the length of the sentence.

5. Donn's family is in the Los Angeles area. It is difficult for Donn to maintain contact with his family here, except through the mail. This additional burden may hinder the efforts at rehabilitation being made by correctional authorities.

6. It is thus respectfully requested that Donn's sentence be reduced to five years. I am informed and believe that a five year sentence will make it possible for Donn to be designated to the Federal Correctional Institution at Terminal Island, California. This would enable Donn to be close to his family and receive visits from them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 7, 1979, at Los Angeles, California.

_____
JAN LAWRENCE HANDZLIK

584

## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF

I, the undersigned, say:

I have read the foregoing_____

_____and know its contents.

### ☒ CHECK APPLICABLE PARAGRAPH

☐ I am a party to this action. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an officer ☐ a partner_____☐ a _____of_____

a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I am informed and believe and on that ground allege that the matters stated in it are true.

☐ I am one of the attorneys for_____.

a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in it are true.

Executed on_____, 19____, at _____California.

I declare under penalty of perjury that the foregoing is true and correct.

_____
(Signature)

### ACKNOWLEDGMENT OF RECEIPT OF DOCUMENT
#### (other than summons and complaint)

Received copy of document described as_____

_____

on_____19____.

_____
(Signature)

### PROOF OF SERVICE BY MAIL

STATE OF·CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of____Los Angeles_____, State of California.
I am over the age of 18 and not a party to the within action; my business address is: 2049 Century Park East, Suite 1200, Los Angeles, California 90067
On__May 8_____19 79, I served the foregoing document described as MOTION FOR REDUCTION OF SENTENCE; DECLARATION OF JAN LAWRENCE HANDZLIK

_____·___ on __the interested party_____
in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at:____Los Angeles, California_____
addressed as follows:

John Robertson, Esq.
Assistant United States Attorney
312 North Spring Street
Los Angeles, California 90012

Executed on __May 8_____, 19 79 at ____Los Angeles_____, California.
(check applicable paragraph below)

☐ (State) I declare under penalty of perjury that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

STUART'S EXBROOK TIMESAVER (REVISED 3-77)
(May be used in California State or Federal Courts)

/S/ *Mary Ellen Shipley*
(Signature)
MARY ELLEN SHIPLEY

EXHIBIT 6

(SPACE BELOW FOR FILING STAMP ONLY)

**STILZ, BOYD, LEVINE & HANDZLIK**
ATTORNEYS AT LAW
TWO CENTURY PLAZA
2049 CENTURY PARK EAST, SUITE 1200
LOS ANGELES, CALIFORNIA 90067
(213) 277-6844 OR 879-0662

FILED

MAY 21 2 35 PM '79

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.

BY _____

Attorneys for Defendant
Aron Edward Donn

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR 78-1028-AAH |
| | ) | |
| Plaintiff, | ) | SUPPLEMENTAL DECLARATION |
| | ) | IN SUPPORT OF MOTION FOR |
| v. | ) | REDUCTION OF SENTENCE |
| | ) | |
| ARON EDWARD DONN, | ) | |
| | ) | Date: May 29, 1979 |
| Defendant. | ) | Time: 1:30 p.m. |
| | ) | |

Defendant Aron Edward Donn hereby respectfully submits the following additional Declaration in support of his Motion for Reduction of Sentence.

Dated May 18, 1979.

Respectfully submitted,

STILZ, BOYD, LEVINE & HANDZLIK

By _____
JAN LAWRENCE HANDZLIK
Attorneys for Defendant
Aron Edward Donn

## DECLARATION OF JAN LAWRENCE HANDZLIK

I, JAN LAWRENCE HANDZLIK, state:

1. I am the attorney for Defendant Aron Donn ("Donn") in this case.

2. On May 11, 1979, I spoke by telephone with Mr. Ron Dupree ("Dupree"), Donn's Case Manager at the Federal Correctional Institution, Englewood, Colorado.

3. Dupree stated to me that Donn has adjusted well and is making good progress. Progress reports and other prison data regarding Donn may be obtained by the Court, not counsel. The attached Classification Study is all that may be provided without a court order.

4. Dupree further stated that Donn was concerned about being separated from his family, which is located in Los Angeles. The anxiety engendered by this separation may hinder rehabilitative efforts. Donn wants very much to be transferred to a Federal Correctional Institution in California.

5. Dupree further stated that the length of an inmate's sentence is an important factor in the Bureau of Prison's determination as to which institution to send him to. Dupree noted that a five (5) year sentence might result in Donn's transfer to Lompoc or Terminal Island.

6. I am informed and believe that the members of Donn's family who live in the Los Angeles area are as follows: Ferdeg (father); Million (mother); Bertha Bundy (sister); Millie Wiley (sister); Alice Mann (common-law wife); and his child by Ms. Mann.

7. It is respectfully requested that Donn's sentence be reduced from eight to five years.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of May 1979 at Los Angeles, California.

<u>Jan L. Handzlik</u>
JAN LAWRENCE HANDZLIK

FEDERAL CORRECTIONAL INSTITUTION
_ ENGLEWOOD, COLORADO_

CLASSIFICATION STUDY

Name: DONN, Aron Edward Register Number: 63096-012 Date: April 24, 197

### STAFF SUMMARY

<u>Current Offense and Prior Record</u>: U.S. Attorney charges that on or about October 11, 1978, in the Central District of California, Donn by force took from a teller $453.00 which belonged to the Bank of America, 7060 Sepulveda Blvd, Van Nuys, California. His prior record reveals three juvenile referrals at age 13, 15 and 15 for Petty Theft, Burglary and Joy Riding. He was committed to the California Youth Authority in early 1968, and paroled from Youth Authority Camp on September 24, 1968. As an adult, he has had referrals for Tampering With a Vehicle, Plain Drunk, Shoplifting, Burglary, Failure to Disperse, Possession of Dangerous Drugs and Burglary, and two additional Burglary charges in late 1975-early 1976. In late 1971, he was committed to the State Prison, from which he was paroled August 28, 1975. Approximately three months later, he was involved again in a burglary, returned to State Prison, and on April 26, 1978, he was paroled to Los Angeles County. As a result of his arrest in the instant offense, he was administratively found in violation of parole by the Community Release Board of the State of California and was recommitted to prison for a term of six months. There is a slight possibility of a hold or detainer by the State of California in the above instance.

<u>Social Situation</u>: Donn was born in Los Angeles, California, and is the youngest of five children. He grew up in a high-crime rate, culturally deprived area of the San Fernando Valley attending school until age 17 when he dropped out. His school adjustment was poor. He had serious difficulties as he was in continuous conflict with the law as a juvenile offender. He has never legally been married, however, records indicate that he fathered one child as a result of a common law relationship. In general, he denies the use of narcotics, however, states that he uses phencyclidine occasionally and was on PCP at the time of the bank robbery. It was a recommendation of the court that he receive psychiatric assistance during this period of commitment.

<u>Recommended Program</u>: Donn is somewhat unsure as to what he will do upon his return to the community. However, he has indicated an interested in vocational training-auto mechanics or plumbing work. He will be programmed through the school for a possible GED, will be placed in Auto Mechanics VT when space is available, may be placed in an OJT program in plumbing and will be heavily programmed in group activities in the Drug Abuse Unit. Additionally, he will be seen on an as-needed basis by the Unit Psychologist and a written evaluation will be prepared by the Unit Psychologist at least every 90 days.

<u>Community Resources</u>: At this time Donn states that his plans are to return to Los Angeles, California and again reside with his wife and child, hoping to get a job in the auto mechanics field, if at all possible. However, should this not be

possible, he has indicated an interest of further training in whatever field would be available to him so that he will no longer have to be involved in instances of illegal nature.

Completed by: _____
 Lewis R. Kinnear, DAPS Unit Manager

---

## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF

I, the undersigned, say:

I have read the foregoing_____
_____and know its contents.

☒ CHECK APPLICABLE PARAGRAPH

☐ I am a party to this action. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an officer ☐ a partner_____☐ a _____of_____
a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I am informed and believe and on that ground allege that the matters stated in it are true.

☐ I am one of the attorneys for_____,
a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters· stated in it are true.

Executed on _____, 19____, at _____California.

I declare under penalty of perjury that the foregoing is true and correct.

_____
(Signature)

### ACKNOWLEDGMENT OF RECEIPT OF DOCUMENT
(other than summons and complaint)

Received copy of document described as_____

on_____19____.

_____
(Signature)

### PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of__Los Angeles_____, State of California. I am over the age of 18 and not a party to the within action; my business address is:_2049 Century Park East, Suite 1200; Los Angeles, California 90067___
On__May 18_____19_79, I served the foregoing document described as _SUPPLEMENTAL DECLARATION IN SUPPORT OF MOTION FOR REDUCTION OF SENTENCE

_____ on _Plaintiff_____
in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at:_____Los Angeles, California_____
addressed as follows:

John Robertson, Esq.
Assistance U. S. Attorney
312 North Spring St.
Los Angeles, CA 90012

Executed on __May 18_____, 19_79 at_Los Angeles_____, California.
(check applicable paragraph below)

☐ (State) I declare under penalty of perjury that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
(Signature)
CAROLE F. LENZ

STUART'S EXBROOK TIMESAVER (REVISED 3-77)
(May be used in California State or Federal Courts)

EXHIBIT 7

C/C IV

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF LOS ANGELES
## PROBATION OFFICER'S REPORT

| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff | | | |
|---|---|---|---|
| **DEPT.** NW-A | **ATTY.** A.WEISS | **JUDGE** REA | |

THE PEOPLE OF THE STATE OF CALIFORNIA,
Plaintiff

vs.

AARON EDWARD DONN

Defendant

| DEPT. | ATTY. | JUDGE |
|---|---|---|
| NW-A | A.WEISS | REA |
| **HEARING** 9-3-76 | **D.A. NO.** | **COURT CASE NO.** A-134737 |
| **C.I.I. NO.** 3276067 | | |
| **DPO** D. ABRAMS | **AREA OFFICE** ESFV | **PROB. NO.** X-701 043 |

| TRUE NAME | ADDRESS |
|---|---|
| SAME | LOS ANGELES COUNTY JAIL |

CHARGED WITH THE CRIME(S) OF

459 P.C. (BURGLARY)

| CONVICTED OF THE CRIME(S) OF | BY (PLEA, CT. JURY) | DAYS IN JAIL THIS CASE |
|---|---|---|
| 459 P.C. (BURGLARY) SECOND DEGREE | JURY | 40 |

| COMPANION CASES | DISPOSITIONS |
|---|---|
| NONE | |

## PERSONAL HISTORY

| AGE | BIRTHDATE | RACE | FORMAL EDUCATION | AGE LEFT SCHOOL |
|---|---|---|---|---|
| 24 | 11-18-51 | NEGRO | 12 YEARS | 17 |

| MARITAL STATUS | HOME INCLUDES | NO. OF DEPENDENTS |
|---|---|---|
| SINGLE | SELF AND FATHER | ONE |

| OCCUPATION | INCOME PER MONTH | WHERE EMPLOYED | | |
|---|---|---|---|---|
| NONE | 0 | UNEMPLOYED | | |

| HEALTH | CAME TO STATE | CAME TO COUNTY | BRANCH MILITARY SERVICE | KIND OF DISCHARGE |
|---|---|---|---|---|
| GOOD | BORN | BORN | NONE | |

AS SUPPLIED BY

(AS SUPPLIED BY THE DEFENDANT AND VERIFIED IN PART BY INTERESTED PARTIES AND INACTIVE PROBATION FILES.)

DEFENDANT IS THE YOUNGEST OF FIVE CHILDREN BORN TO FERDIG AND MILLION DONN IN LOS ANGELES, CALIFORNIA. HE GREW UP IN A HIGH-CRIME AND CULTURAL DEPRAVATION AREA OF THE SAN FERNANDO VALLEY ATTENDING SCHOOL UNTIL THE AGE OF 17 WHEN HE DROPPED OUT. HIS SCHOOL ADJUSTMENT WAS EXTREMELY POOR AND HE HAD SERIOUS ACADEMIC DIFFICULTIES. HE FAILED MOST CLASSES AND HAD UNSATISFACTORY CITIZENSHIP GRADES. HE WAS IN CONTINUOUS CONFLICT WITH THE LAW AS A JUVENILE AND INITIALLY WAS COMMITTED TO THE CALIFORNIA YOUTH AUTHORITY IN 1968.

DEFENDANT HAS NEVER SEEN MILITARY SERVICE AND HAS NO SKILLS OR TRADE. HE HAS LITTLE WORK HISTORY AND THAT IS

MOSTLY ODD-JOBS OF SHORT DURATION. MORE RECENTLY, SINCE HIS RELEASE FROM PRISON AND BEFORE HE WAS INCARCERATED, HE WAS ATTENDING CALIFORNIA STATE UNIVERSITY AT NORTHRIDGE UNDER A GRANT PROGRAM FOR EX-OFFENDERS.

DEFENDANT HAS NEVER MARRIED HOWEVER, HAS FATHERED A DAUGHTER THROUGH A COMMON-LAW RELATIONSHIP. DAUGHTER IS NOW SIX YEARS OF AGE AND SUPPORTED BY THE SISTER OF THE CHILD'S MOTHER.

DEFENDANT REPORTS HIS HEALTH IS GOOD AND DENIES SERIOUS ILLNESS OR INJURY. HE APPEARS TO BE OF AVERAGE INTELLIGENCE, BELONGS TO NO GROUPS OR ORGANIZATIONS AND HAS NO PARTICULAR LEISURE TIME ACTIVITIES.

### NARCOTICS AND INTOXICANTS:

THE DEFENDANT RELATES THAT BEFORE HE WENT TO PRISON HE USED MARIJUANA, UPPERS AND REDS REGULARLY. HE USED UPPERS ON A DAILY BASIS FOR ABOUT THREE YEARS PRIOR TO GOING TO PRISON AND HE USED REDS AS A TEENAGER ON A REGULAR BASIS. HE EXPERIMENTED WITH LSD BRIEFLY. HE BEGAN DRINKING CONTINUOUSLY AFTER HE WAS ARRESTED IN THE MATTER CURRENTLY BEFORE THE COURT UNTIL HIS SUBSEQUENT ARREST ON ANOTHER BURGLARY CHARGE. HE DOES NOT HAVE A HISTORY OF EXCESSIVE DRINKING HOWEVER.

### ARREST RECORD:

#### SOURCES OF INFORMATION:

LACO, CII AND INACTIVE PROBATION FILES.

#### JUVENILE HISTORY:

10-3-65 LAPD - SUSPICION OF PETTY THEFT - COUNSELED AND RELEASED.

10-4-66 VIOLATION OF CURFEW - COUNSELED AND RELEASED.

6-5-67 LAPD - 602 WIC, 459 P.C. (BURGLARY) - HOME ON PROBATION.

6-22-67 LAPD - SUSPICION OF 245 P.C. - REFERRED TO PROBATION OFFICER.

9-22-67 LAPD - 602 WIC, 10851 V.C. - DISMISSED.

11-13-67 LAPD - 602 WIC, 487.3 P.C. TTA - CAMP PLACEMENT.

(THE DEFENDANT WAS PLACED IN THE FORESTRY CAMP PROGRAM ON 12-26-67. HE WAS REMOVED FROM CAMP FOUR DAYS LATER AT HIS OWN REQUEST AND COMMITTED TO THE CALIFORNIA YOUTH AUTHORITY WHERE HE WAS PAROLED ON 9-24-68.)

4-3-69 LAPD - 602 WIC, 484 P.C. - NO DISPOSITION.

5-22-69 17 LAPD - 602 WIC, 653(G) P.C. - PETITION REQUESTED.

6-8-69 17 LAPD - 602 WIC, 148 P.C. - PETITION REQUESTED.

10-3-69 17 LAPD - 602 WIC, 647(F) P.C. - PETITION REQUESTED.

11-13-69 17 LAPD - 602 WIC, 211 P.C. (ROBBERY) - RELEASED.

## ADULT HISTORY:

11-24-69 LAPD - 459 P.C. (BURGLARY FROM A MOTOR VEHICLE) - 10 DAYS COUNTY JAIL.

(IN THIS MATTER, A D.A. REJECT, A MISDEMEANOR COMPLAINT WAS FILED CHARGING 10852 V.C. DEFENDANT WAS SENTENCED TO 10 DAYS IN COUNTY JAIL WITH THREE DAYS SUSPENDED. HE WAS USING A SCREWDRIVER TO BREAK INTO A TRUCK WHEN THE VICTIM APPROACHED. DEFENDANT FLED BUT WAS LATER ARRESTED AND HIS WALLET AND IDENTIFICATION WERE FOUND ON THE FLOOR OF THE TRUCK.)

12-3-69 LAPD - 647(F) P.C. - 30 DAYS SUSPENDED.

12-14-69 LAPD - 484 P.C. (SHOPLIFTING) - 30 DAYS COUNTY JAIL.

(DEFENDANT PUT ON TWO COATS IN A WHITE FRONT DEPARTMENT STORE IN PACOIMA AND WAS STOPPED AS HE ATTEMPTED TO LEAVE WITHOUT PAYING.)

1-20-70 LAPD - 459 P.C. (BURGLARY) - COMMITTED TO THE CALIFORNIA YOUTH AUTHORITY.

(IN CASE NUMBER A-111478 THE DEFENDANT WAS CONVICTED OF SECOND DEGREE BURGLARY AND COMMITTED TO THE CALIFORNIA YOUTH AUTHORITY ON 2-26-70 AND PAROLED ON 12-17-70.

(POLICE INVESTIGATION REVEALED THAT THE FRONT GLASS DOOR HAD BEEN BROKEN AT A FURNITURE STORE AND DEFENDANT WAS OBSERVED CRAWLING ON THE FLOOR INSIDE THE BUILDING. HE HAD COME INTO AN OFFICE AREA AND REMOVED COINS FROM A DESK DRAWER AND ALSO ADMITTED BURGLARIZING A NEARBY BARBER SHOP.)

4-9-71 LAPD - 459 P.C. (BURGLARY) - RELEASED, RE-BOOKED ON PETTY THEFT.

(WHILE DEFENDANT WAS AT A DRIVE-IN, A FRIEND STOLE AN ADDING MACHINE FROM THE DRIVE-IN OFFICE AND GAVE IT TO DEFENDANT WHO PLACED IT IN THE TRUNK OF HIS CAR.)

5-22-71 LAPD - 11911 H&S (POSSESSION OF DANGEROUS DRUGS FOR SALE) - RELEASED.

(DEFENDANT AND COMPANIONS WERE OBSERVED IN A CAR THAT WAS TRAVELING ERRATICALLY. A CONTAINER WITH PILLS WAS THROWN OUB OF THE CAR WINDOW AND THE CONTAINER SHATTERED ON THE PAVEMENT SCATTERING PILLS ON THE ROADWAY. THE CAR WAS STOPPED AND ADDITIONAL PILLS WERE FOUND INSIDE.)

7-19-71 LAPD - 11530 H&S (POSSESSION OF MARIJUANA) - NO DISPOSITION.

(POLICE WERE CALLED TO INVESTIGATE A BURGLARY FROM A MOTOR VEHICLE AND WHILE TALKING TO DEFENDANT A MARIJUANA CIGARETTE WAS OBSERVED IN HIS HAND.)

8-7-71 LAPD - 416 P.C. (FAILURE TO DISPERSE) - ONE-YEAR PROBATION.

(OFFICERS WENT TO A DISTURBING THE PEACE CALL AND OBSERVED MANY PEOPLE INCLUDING DEFENDANT WHO WAS ARRESTED WHEN HE DID NOT OBEY ORDERS TO DISPERSE.)

10-8-71 LAPD - 459 P.C. (BURGLARY) - D.A. REJECT.

(DEFENDANT WAS OBSERVED WALKING FROM THE FRONT OF A MARKET
WHERE AN ALARM HAD GONE OFF. POLICE DETAINED HIM AND HE
OBSERVED THAT THE GLASS DOOR HAD BEEN DAMAGED. DEFENDANT
ATTEMPTED SUICIDE IN JAIL ON ONE OCCASION BY CHOKING HIMSELF
WITH A PILLOWCASE AND BY ATTEMPTING TO HANG HIMSELF WITH
HIS PANTS. HE DENIES ATTEMPTING TO BREAK INTO THE STORE AND
ALSO DENIES ATTEMPTED SUICIDE.)

10-28-71 SAN FERNANDO PD - 211 P.C. (ROBBERY) - D.A. REJECT.

(ACCORDING TO POLICE RECORDS DEFENDANT AND A COMPANION WHILE
WALKING WERE STOPPED FOR INVESTIGATION AND A LOADED .22 CALIBER
RIFLE WAS FOUND NEARBY ON THE GROUND.)

11-22-71 LAPD - 11910 H&S (POSSESSION OF DANGEROUS DRUGS)
 SENTENCED TO STATE PRISON.

(ON 5-11-72 IN SUPERIOR COURT, DEPARTMENT NORTHWEST-E DEFENDANT
WAS SENTENCED TO STATE PRISON HAVING BEEN CONVICTED OF SECOND
DEGREE BURGLARY, IN INFORMATION A-120136 AND A-120094. HE
WAS SENTENCED PURSUANT TO 1202(B) OF THE PENAL CODE.

(IN THIS MATTER HE WAS INITIALLY ARRESTED FOR POSSESSION OF
DANGEROUS DRUGS AND THEN LATER CHARGED WITH THREE COUNTS OF
BURGLARY WHICH WERE CONSOLIDATED. DEFENDANT HAD BEEN STOPPED
FOR DRIVING ERRATICALLY AND A SEARCH OF HIS VEHICLE REVEALED
700 BARBITURATE CAPSULES BEING DISCOVERED. INSOFAR AS THE
BURGLARIES ARE CONCERNED, THE DEFENDANT APPARENTLY BROKE THE

GLASS IN THE FRONT DOOR OF A GARAGE AND RANSACKED THE
AREA THEN BROKE THROUGH A WALL TO THE NEXT-DOOR BUSINESS
TAKING JEWELRY FROM A DISPLAY COUNTER AND DRUGS FROM THE
PHARMACY SECTION. HE ALSO TOOK A SMALL COIN-OPERATED STAMP
MACHINE.)

(THE DEFENDANT WAS PAROLED ON 8-28-75.)

12-9-75 LAPD - 459 P.C. -(BURGLARY) - THIS REFERS TO THE
 PRESENT OFFENSE.

2-3-76 LAPD - 23102(A) V.C. - (DIVERSION)

(THE DEFENDANT WAS ORDERED TO SPEND 16 HOURS LABOR IN A
COURT DIVERSION PROGRAM WHICH HE COMPLETED.)

3-23-76 LAPD - 148 P.C. - SIX MONTHS SUMMARY PROBATION.

3-26-76 LAPD - 459 P.C. (BURGLARY) - TRIAL PENDING.

(IN A-135294 TRIAL IS PENDING IN THIS MATTER. DEFENDANT
BROKE INTO A MARKET AND WAS ARRESTED INSIDE THE MARKET WITH
CONTRABAND ON HIS PERSON.)

PRESENT OFFENSE:

 DEFENDANT WAS ARRESTED BY OFFICERS OF THE

LOS ANGELES POLICE DEPARTMENT ON DECEMBER 9, 1975 AND BOOKED

FOR VIOLATION OF SECTION 459 PENAL CODE (BURGLARY). HE WAS HELD

TO ANSWER IN LOS ANGELES MUNICIPAL COURT, DIVISION 116 ON

FEBRUARY 11, 1976. HE APPEARED FOR JURY TRIAL IN LOS ANGELES

SUPERIOR COURT, DEPARTMENT NORTHWEST-A WHERE HE WAS CONVICTED

OF SECOND DEGREE BURGLARY ON AUGUST 18, 1976. PROBATION AND

SENTENCE HEARING WAS SET FOR INSTANT DATE.

FROM THE ARREST REPORT AND THE DISTRICT ATTORNEY'S FILE AS WELL AS THE TRANSCRIPT OF THE PRELIMINARY HEARING, THE FOLLOWING APPEARS TO BE THE ELEMENTS OF THE CASE:

ADA FRAZIER, OWNER OF ADA'S BEAUTY SALON, LOCATED AT 10874 RELSTON IN PACOIMA TESTIFIED THAT ON NOVEMBER 11, 1975, A BURGLARY OCCURRED AT HER BUSINESS. A FRONT WINDOW WAS SMASHED IN. MISSING WAS VARIOUS BEAUTY SUPPLIES, MONEY FROM THE COKE MACHINE WHICH HAD BEEN BROKEN INTO, AND APPROXIMATELY 34 COSTUME JEWELRY RINGS. FINGERPRINTS TAKEN FROM THE SCENE MATCHED THE DEFENDANT'S.

DEFENDANT'S STATEMENT:

DEFENDANT HAS NOT SUBMITTED A WRITTEN STATEMENT. VERBALLY, HE RELATES THAT HE JUST REACTED OFF OF A WHIM OR IMPULSE. HE CANNOT EVEN REMEMBER THE NIGHT THAT THIS BURGLARY HAPPENED. HE WAS NOT HURTING FOR MONEY PARTICULARLY AND AFTERWARDS, HE REGRETTED WHAT HE HAD DONE. HE THOUGHT ABOUT GETTING ARRESTED AND THOUGHT ABOUT THE WALLS INSIDE OF PRISON AGAIN AND THEN HE STARTED TO DRINK HEAVILY.

DEFENDANT RELATES THAT BEFORE HE GOT OUT OF PRISON IT SEEMED LIKE AN ETERNITY. HE WENT TO PRISON AS A 20-YEAR-OLD AND DID FOUR YEARS. HE GOT OUT AND IT WAS VERY STRANGE FOR HIM. HE WENT BACK TO HIS NEIGHBORHOOD WHERE HE GREW-UP AND EVERYTHING WAS DIFFERENT. HE WAS TRIPPED OUT. EVERYONE WAS DOING THEIR OWN THING AND MAKING PROGRESS AND HERE HE WAS WITH NOTHING. EVERYONE HE USED TO KNOW HAD HOMES OR JOBS OR CARS, OR WERE EITHER DOPE FIENDS AND DEAD. HE CAME OUT AND HE WAS CONFUSED AND HAD NO TIME TO ADJUST. HE WENT INTO A SCHOOL PROGRAM ALMOST IMMEDIATELY AND HE WAS BACK INTO A RESTRICTED STRUCTURE ONCE AGAIN. HE COULD NOT HANDLE IT AND PULLED THE BURGLARY ON IMPULSE.

DEFENDANT RELATES THAT EVER SINCE 1967 HE HAS ONLY BEEN ON THE STREET ABOUT TWO-AND-A-HALF YEARS. HE MAY BE INSTITUTIONALIZED HE KEEPS HIS MIND FOCUSED ON THE STREET. IT IS TOUGH TO FIGURE OUT WHY OR HOW TO CHANGE AND HE IS LOSING ALL FEELING. GOING TO PRISON WOULD NOT MAKE HIM BETTER BUT WOULD PROBABLY BE WORSE. PRISON KILLS THE ABILITY TO FEEL OR CARE ABOUT ANYONE AND YOUR ONLY INSTINCTS THERE/IS FOR SURVIVAL.

THE DEFENDANT RELATES THAT HE DID NOT REALLY WANT TO COMMIT THESE CRIMES. HE IS TIRED AND THAT'S THE TRUTH. HE DOES NOT WANT TO GO BACK TO PRISON AND HE WOULD RATHER DIE. WHEN HE GETS OUT OF THIS MESS HE HAS NO INTENTION OF STEALING OR ANYTHING LIKE THAT. HE IS GOING TO GET A JOB AND NOW THAT HE HAS A CHANCE TO SEE WHAT IS OUT ON THE STREETS HE WILL BE ABLE TO BETTER ADJUST IN THE FUTURE. HE JUST COULD NOT HANDLE IT THIS TIME BECAUSE IT ALL CAME TOO FAST AND IT WAS TOO MUCH OF A SHOCK.

INTERESTED PARTIES:

PROBATION OFFICER SPOKE WITH THE DEFENDANT'S PAROLE AGENT WHO STATES THAT DEFENDANT WAS NOT ON PAROLE VERY LONG BEFORE HE ACCUMULATED FOUR ARRESTS. THERE IS NOT TOO MUCH HE CAN SAY IN THE DEFENDANT'S BEHALF. ALTHOUGH A LIKEABLE KIND OF PERSON, THE DEFENDANT/ JUST COULD NOT HANDLE THE STREETS AND STAY AWAY FROM CRIME. HE MADE POOR JUDGEMENTS, ACTED IMPULSIVELY, AND COULD NOT RESIST TEMPTATION. HE WILL BE RECOMMENDING A VIOLATION OF PAROLE AND REVOCATION WITH A RETURN TO THE INSTITUTION IN ALL LIKELIHOOD.

PROBATION OFFICER SPOKE TO INVESTIGATOR BURROW OF THE FOOTHILL DETECTIVES. HE STATES THAT DEFENDANT WAS TOTALLY UNCOOPERATIVE WITH THE POLICE AND IS A PROFESSIONAL CRIMINAL. HE DOES NOT BELIEVE THE DEFENDANT CAN LAST TWO DAYS ON THE STREETS WITHOUT RETURNING TO CRIME. HE FEELS DEFENDANT SHOULD BE SENT TO THE STATE PRISON BECAUSE HE HAS EARNED IT. HE JUST DOES NOT SEEM TO CARE ABOUT ANYONE.

VICTIM'S STATEMENT:

PROBATION OFFICER SPOKE WITH THE VICTIM, ADA FRAZIER, WHO STATES THAT THIS BURGLARY COST HER ABOUT $400 TO GET BACK IN THE BUSINESS. SHE STATES THAT DEFENDANT OUGHT TO GO TO PRISON. HE HAS BROKEN INTO HER PLACE PREVIOUSLY SHE BELIEVES, AND HE HAS ALSO BROKEN INTO A BARBER SHOP NEXT DOOR AND THAT IS THE ONE THAT HE WENT TO PRISON FOR.

EVALUATION:

APPEARING BEFORE THE COURT IS A 24-YEAR-OLD DEFENDANT WHO HAS SPENT THE BETTER PART OF THE PAST 10 YEARS IN INSTITUTIONS. CLEARLY, HE IS INSTITUTIONALIZED IN HIS

BEHAVIOR SUBSEQUENT TO HIS LATER PAROLE REVEALS A MARKED INABILITY TO ADJUST BACK INTO SOCIETY. HIS HISTORY IS LENGTHY AND HE CONTINUES TO REFLECT THE SAME LACK OF CONTROL THAT HAS CONSISTENTLY BROUGHT HIM INTO CONFLICT WITH THE LAW IN THE PAST.

INSOFAR AS THE PRESENT MATTERS ARE CONCERNED, THE DEFENDANT IS ALREADY ON PAROLE FROM THE DEPARTMENT OF CORRECTIONS, HAS ANOTHER BURGLARY CASE PENDING. DESPITE DEFENDANT'S ALLEGED NEW INSIGHT AND AWARENESS OF WHAT IT WILL TAKE FOR HIM TO SUCCEED IN SOCIETY, HE CANNOT AT THIS TIME BE CONSIDERED A GOOD RISK TO Be RETURNED TO THE COMMUNITY. PROBATION COULD HARDLY BE CONSIDERED A REALISTIC DISPOSITION AND THE FOLLOWING RECOMMENDATION IS THEREFORE MADE.

RECOMMENDATION:

IT IS THEREFORE RECOMMENDED THAT PROBATION BE DENIED.

RESPECTFULLY SUBMITTED,

KENNETH F. FARE,
ACTING PROBATION OFFICER

I HAVE READ AND CONSIDERED
THE FOREGOING REPORT OF THE
PROBATION OFFICER

BY _____
DENNIS L. ABRAMS, DEPUTY
EAST SAN FERNANDO VALLEY AREA OFFICE
TELEPHONE: 787-3350
READ AND APPROVED
JACOB N. ETNER, SDPO

_____
JUDGE OF THE SUPERIOR COURT

(DICTATED : 9-2-76)
DLA:JW (6)

---

EXHIBIT 8

| HONOR LE: | HARRY V PEETRIS | | M SMITH | , Deputy Clerk |
| | L PIERCE | JUDGE | W RESCHMAN | , Reporter |
| | | Deputy Sheriff | | (Parties and counsel checked if present) |

| A120136/A120094 | JOSEPH P BUSCH JR | XEVELCEXXXXXXXXGER, DISTRICT ATTY. BY |
| PEOPLE OF THE STATE OF CALIFORNIA | Counsel for Plaintiff | P WYNN DEPUTY |
| VS | | |
| TRUE NAME: DONN, ARON EDWARD | Counsel for Defendant | R. S. BUCKLEY, PUBLIC DEFENDER BY |
| AKA Down, Aron Edward X522400 | | D FINN DEPUTY |

NATURE OF PROCEEDINGS PROBATION AND SENTENCE (Boxes checked if order applicable)
1766356
Court advises defendant of his right to appeal.

---

PROBATION DENIED. SENTENCE AS INDICATED BELOW.
Whereas the said defendant having...................duly...................pleaded...........................................
guilty in this court of the crime of BURGLARY (Sec 459 PC), of the second degree, a felony, as charged in Count 3 of the information

It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the

☐ County Jail of the County of Los Angeles for the term of...............................

☒ State Prison for the term prescribed by law.

**The Court fixes the minimum term at six months, pursuant to Section**
~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~ **1202b, Penal Code**
**To be given credit for one hundred and seventy one days heretofore served**

It is further Ordered that the defendant be remanded into the custody of the Sheriff of the County of Los Angeles

☒ to be by him delivered into the custody of the Director of Corrections at the California State Prison at Chino.

☐ to be by him delivered into the custody of the Director of Corrections at the California State Institution for Women at Frontera.

THIS MINUTE ORDER WAS
ENTERED

☐ Remaining count (s) dismissed in interests of justice.
☐ Bail exonerated.

MAY 12, 1972
WILLIAM G. SHARP, COUNTY
CLERK AND CLERK OF THE
SUPERIOR COURT

2 76J 805A - 4/70

JUDGMENT

EXHIBIT 9

STATE OF CALIFORNIA—HEALTH AND WELFARE AGENCY EDMUND G. BROWN JR., Governor

**DEPARTMENT OF YOUTH AUTHORITY**
4241 Williamsbourgh Drive
Sacramento, California 95823

March 26, 1980

Supervisor of Education
Federal Correctional Institution
Box 7, Terminal Island
San Pedro, CA 90731

Gentlemen: Re: DONN, Aaron E.
 #68096-012

In reply to your request for information in the above-named Case:

☐ We are enclosing a copy of a report which should give you the
 desired information. Please destroy this material by shredding
 after it has served its purpose.

☒ We are enclosing a copy of a Transcript of High School Record.

☐ Unable to identify. If you can supply us with any alias subject
 may have used and date of birth, we will be glad to check our
 records again.

☐ Unable to comply with your request as we no longer carry case
 files seven years beyond the date of discharge.

☐ Other:

 Jean C. Siler, Supervisor
 Ward Master Files
 (916) 445-7250

JCS: sc

# TRANSCRIPT OF HIGH SCHOOL RECORD y# 85011

## General Record

| School Year | 1st Sem. McClay Jr. | | High School |
| 19 65 –19 66 | 2d Sem. McClay Jr. | | High School |

NINTH GRADE

| LINE No. | NAME OF SUBJECT | 1M | 1d | SEMESTER HANDS |
|---|---|---|---|---|
| 1 | English | D | C | 10 |
| 2 | Wld. Hist-Geog. | C | | 5 |
| 3 | Science/Speech | C | D | 10 |
| 4 | Gr. Arts/Ind. Cr. | B | D | 10 |
| 5 | Wood | | C | 5 |
| 6 | P. E. | A | B | 10 |
| 7 | | | | |
| 8 | | | | |

| School Year | 1st Sem. San Fernando | | High School |
| 19 66 –19 67 | 2d Sem. San Fernando | | High School |

TENTH GRADE

| 9 | English | D | D | 10 |
| 10 | Read. Imp. | | F | |
| 11 | D. E. | | F | |
| 12 | Wld. Hist/Psod | F | F | |
| 13 | Bus. Math/Draft | C | D | 10 |
| 14 | Biology/Guld. | D | D | 7½ |
| 15 | P. E. | F | F | |
| 16 | | | | |

| School Year | 1st Sem. San Fernando/Juv. Hall | | High School |
| 19 67 –19 68 | 2d Sem. S.F.J.H./Paso Robles | | High School |

ELEVENTH GRADE

| 17 | U.S. History/Wld. Hist. | C | C | 10 |
| 18 | Science/Math | C(2½) | B | 7½ |
| 19 | Music/Gr. Guid. | B | P | 10 |
| 20 | English | | C | 5 |
| 21 | Ind. Arts | | C | 5 |
| 22 | P. E. | | B | 5 |
| 23 | | | | |
| 24 | | | | |

| School Year | 1st Sem. Paso Robles | | High School |
| 19 68 –19 69 | 2d Sem. San Fernando | | High School |

TWELFTH GRADE

| 25 | English | C | | 2½ |
| 26 | U.S. History | F | | |
| 27 | Wld. Hist. | D | | 2½ |
| 28 | Biology | D | | 5 |
| 29 | Math | B | | 2½ |
| 30 | D. E. | D | | 2½ |
| 31 | Gr. Guld. | B | | 2½ |
| 32 | Ind. Arts | C/D | | 5½ |

| School Year | 1st Sem. Youth Training | | High School |
| 19 70 –19 70 | 2d Sem. | | High School |

GRADUATE

| 33 | English | B | | 5 |
| 34 | American Govt. | C | | 5 |
| 35 | U.S. History | C | | 5 |
| 36 | D.E/TA | C | C/C | 10 |
| 37 | Culinary Arts | C | C | 20 |
| 38 | Math | C | C | 2½ |
| 39 | | | | |
| 40 | | | | |

TOTAL SEMESTER PERIODS 212½

* A, B, C, D, or F only. "Inc." should not be reported as a semester mark on the transcript of record.

---

Student's full name DOHN, Aaron Edward
Student's address .........
Parent or guardian's name .........

| | MONTH, DAY, YEAR |
|---|---|
| Student's birth date | 11/18/51 |
| Date entered this school | 3/31/70 |
| Date of withdrawal | 12/17/70 |
| or | |
| Date of graduation | 12/11/70 |

This student ranked approximately ............ in a graduating class numbering ............

### Check List of Certain Requirements for Graduation

(Indicate below, by inserting line number of corresponding entry in the accompanying General Record, the instruction which fulfills the following graduation requirements)

| See Line No. | Requirement | Status |
|---|---|---|
| 30 | Driver Education (Ed. C. §§8101-8113, 1 C.A.C. §171-71) | [X] completed [ ] not completed |
| 36 | First Aid and Life Saving (1 C.A.C. §183.1) | [X] completed [ ] not completed |
| | 15 semester hours, including the following subjects: (Ed. C. §§7741-7724, 1 C.A.C. §181a) | [ ] number of semester |
| 17 25 | American history | periods remaining to |
| 34 | U. S. Constitution | be completed |
| 17 25 | American ideals and institutions | |
| 34 | California state and local government | |

### Record of Test Data

| NAME OF TEST | FORM | DATE GIVEN | TEST SCORE |
|---|---|---|---|
| CAT TR-7.7;TA-6.8;TL-6.5 | | 3/1/70 | 7.0 |

### Record of Participation in Extra-Curricular Activities

| ACTIVITY | NUMBER OF SEMESTERS |
|---|---|
| | |
| | |

### Principal's Recommendation to Specific Institution If Required

(If admission to a collegiate institution on the basis of the above record requires the principal's recommendation, note here. "Recommended," "Recommended Provisionally," etc.)

Trans. to: A. Accaruaro 12/31/70

Date this certificate issued ........ JAN 5 1971
Month Day Year

I certify that the above information is correct.

[SIGNED] .......................................... Principal

YOUTH TRAINING SCHOOL ........ High School
P.O. BOX 600 ........ School District
ONTARIO, CALIFORNIA 91761 Post Office

This transcript should be mailed to the school or college designated by the student.

YTS 362 Rev. 10/68

California State
Department of Education
Bureau of Elementary
and Secondary Education
Form No. 5-2 (Rev. 1-70)

If student does not enroll, return the copy
to YA Clerk, Central Office, Sacramento

# TRANSCRIPT OF HIGH SCHOOL RECORD

85017

## General Record

| School year | 1st Sem. | _____ High School |
| 19___ -19___ | 2nd Sem. | _____ High School |

**NINTH GRADE**

| Line no. | Name of subject | Sem. marks* 1st | Sem. marks* 2nd | Semester periods |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |

| School year | 1st Sem. | _____ High School |
| 19___ -19___ | 2nd Sem. | _____ High School |

**TENTH GRADE**

| Line no. | Name of subject | 1st | 2nd | Semester periods |
|---|---|---|---|---|
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |

| School year | 1st Sem. | _____ High School |
| 19___ -19___ | 2nd Sem. | _____ High School |

**ELEVENTH GRADE**

| Line no. | Name of subject | 1st | 2nd | Semester periods |
|---|---|---|---|---|
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |

| School year | 1st Sem. | _____ High School |
| 19___ -19___ | 2nd Sem. | _____ High School |

**TWELFTH GRADE**

| Line no. | Name of subject | 1st | 2nd | Semester periods |
|---|---|---|---|---|
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |
| 29 | | | | |
| 30 | | | | |
| 31 | | | | |
| 32 | | | | |

| School year | 1st Sem. | Youth Trng. School High School |
| 19___ -19 71 | 2nd Sem. | _____ High School |

**POST GRADUATE OR SPECIAL**

| Line no. | Name of subject | 1st | 2nd | Semester periods |
|---|---|---|---|---|
| 33 | NO CREDITS EARNED | | | |
| 34 | | | | |
| 35 | | | | |
| 36 | | | | |
| 37 | | | | |
| 38 | | | | |
| 39 | | | | |
| 40 | | | | |

Total semester periods** _____

---

Student's full name ___DONN, AAron___

Student's address _____

Parent or guardian's name _____

| | Month | Day | Year |
|---|---|---|---|
| Student's birth date ......... | 11 | 18 | 51 |
| Date entered this school ...... | 9/10/71 | | |
| Date of withdrawal ......... | 10/1/71 | | |
| or | | | |
| Date of graduation .......... | | | |

This student ranked approximately _____ in a graduating class numbering _____ .

## Checklist of Certain Requirements for Graduation

*(Indicate below, by inserting line number of corresponding entry in the accompanying General Record, the instruction which fulfills the following graduation requirements.)*

| See line number | Requirements | Status Completed | Not completed |
|---|---|---|---|
| _____ (a) | English | ☐ | ☐ |
| _____ (b) | American history | ☐ | ☐ |
| _____ (c) | American government | ☐ | ☐ |
| _____ (d) | Mathematics | ☐ | ☐ |
| _____ (e) | Science | ☐ | ☐ |
| _____ (f) | Physical education | ☐ | ☐ |

For 1971-1972 school year and thereafter:

| _____ (g) | Demonstrated competence in reading at no less than 8.0 grade placement | ☐ | ☐ |
| _____ (h) | Demonstrated competence in mathematics at no less than 8.0 grade placement | ☐ | ☐ |

## Principal's Recommendation to Specific Institution If Required

*(If admission to a collegiate institution on the basis of the above record requires the principal's recommendation, note here: "Recommended," "Recommended Provisionally," and the like.)*

Date this certificate issued OCT 12 1971
Month Day Year

I certify that the above information is correct.

[Signed] _____
Principal

YOUTH TRAINING SCHOOL _____ High School

_____ School District

P. O. BOX 800, ONTARIO, CA. 91761 Post Office

This transcript should be mailed to the school or college designated by the student.

*A, B, C, D, or F only. "Inc." should not be reported as a semester mark on the transcript of record.
**For graduation, 190 semester periods of credit are required in 1969-70; 200 semester periods are required in 1970-71 and thereafter.

IF9-120 1324--300 2-70 200M

EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

— — —

HONORABLE A. ANDREW HAUK, JUDGE PRESIDING

— — —

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. |
| | ) | CR 78-1028-AAH |
| ARON EDWARD DONN, | ) | |
| | ) | |
| DEFENDANT. | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

~~TUESDAY, DECEMBER 19, 1978~~

1/15/79

IRA LEE NEWLANDER, C.S.R.
312 NORTH SPRING STREET
LOS ANGELES, CALIF. 90012
TELEPHONE: (213)624-0030

APPEARANCES:

APPEARED ON BEHALF OF GOVERNMENT:

ANDREA SHERIDAN ORDIN,
UNITED STATES ATTORNEY, BY

JAMES BRENDAN O'NEILL,
ASSISTANT U.S. ATTORNEY

APPEARED ON BEHALF OF DEFENDANT:

JAN LAWRENCE HANDZLIK, ESQ.

*1/15/79*

LOS ANGELES, CALIFORNIA; TUESDAY, DECEMBER 19, 1978

- - -

THE CLERK: THIS IS CR-78-1028-AAH, THE UNITED STATES OF AMERICA VS. ARON EDWARD DONN.

MR. O'NEILL: GOOD AFTERNOON, YOUR HONOR. JAMES BRENDAN O'NEILL ON BEHALF OF THE UNITED STATES.

MR. HANDZLIK: GOOD AFTERNOON, YOUR HONOR. JAN HANDZLIK ON BEHALF OF MR. DONN, WHO IS PRESENT.

THE COURT: ALL RIGHT.

MR. DONN, NOW IS THE TIME THE COURT WILL HEAR FROM YOU OR YOUR ATTORNEY ANYTHING YOU DESIRE TO SAY IN YOUR OWN BEHALF OR IN MITIGATION OF PUNISHMENT.

THE DEFENDANT: YES.

THE COURT: I HAVE CONSIDERED THE PROBATION REPORT.

MR. HANDZLIK: WOULD YOU LIKE TO HEAR FROM ME FIRST, YOUR HONOR?

THE COURT: IF YOU WISH, WHICHEVER WAY.

MR. HANDZLIK: JUST A FEW BRIEF WORDS. MR. DONN'S PAST RECORD INDICATES THAT THIS IS THE FIRST TIME THAT HE HAS BEEN INVOLVED IN ANY ACTS WHICH WOULD BE CONSIDERED VIOLENT. THERE ARE NO PRIOR ROBBERIES IN HIS PAST; THERE ARE NO USES OF DANGEROUS OR DEADLY WEAPONS; AND, AS A MATTER OF FACT, THERE IS NO TAKING BY FORCE OR BY VIOLENCE OR BY INTIMIDATION IN HIS PAST.

IF I MAY SAY SO, MR. DONN'S PAST RECORD CONSISTS OF A SERIES OF ACTS AND TRANSACTIONS WHICH ARE AMATEURISH. IN BOTH OF THOSE INSTANCES WHICH INVOLVE BURGLARIES MR. DONN HAS BEEN APPREHENDED ON THE SCENE OR A SHORT DISTANCE AWAY FROM THE SCENE ATTEMPTING TO TAKE POSSESSION OF SMALL AMOUNTS OF JEWELRY, OF COINS, AND IN ONE CASE IT INVOLVED A VEHICLE-TAMPERING CHARGE, WHERE HE WAS CAUGHT IN A CAMPER OR TRUCK THAT BELONGED TO THE OWNER. EACH ONE OF THESE OCCASIONS RESULTED IN MR. DONN'S CONVICTION, AND HIS SUBSEQUENT PLACING ON PAROLE BY THE STATE OF CALIFORNIA AND PROBATION BY ANOTHER JUDGE.

BOTH OF THOSE MATTERS ARE STILL PRESENTLY PENDING AGAINST MR. DONN. THE PAROLE BOARD HAS HAD A HEARING, HAS FOUND MR. DONN IN VIOLATION OF HIS PAROLE, AND I BELIEVE HAS ADDED AN ADDITIONAL SIX MONTHS TO HIS SENTENCE; HOWEVER, AT THE PRESENT TIME MR. DONN IS STILL FACING PROBATION REVOCATION PROCEEDINGS WITH REGARD TO ONE OF THE BURGLARY CONVICTIONS THAT HE HAS. I POINT THIS OUT, YOUR HONOR, SIMPLY TO MAKE THE POINT THAT A BANK ROBBERY WHICH MR. DONN ADMITTED HAVING COMMITTED IN THE CASE IS TOTALLY OUT OF CHARACTER, AND MR. DONN'S EXPLANATION OF WHY HE COMMITTED THE BANK ROBBERY SEEMS TO LEND CREDENCE TO THE FACT THAT IT WAS AN ACT OF IMPULSE, SOMETHING THAT WAS DONE ON THE SPUR OF THE MOMENT, A WRONGFUL ACT DONE ON THE SPUR OF THE MOMENT OUT OF DESPERATION AT NOT HAVING EMPLOYMENT, AT NOT BEING ABLE TO PROPERLY SUPPORT HIS COMMON-LAW WIFE AND CHILD.

SO I WOULD ASK YOUR HONOR TO TAKE INTO CONSIDERATION THE FACT THAT THIS MAN, ALTHOUGH HE DOES HAVE A LENGTHY CRIMINAL RECORD, DOES NOT HAVE A RECORD OF VIOLENCE OR OF THE USE OF A WEAPON.

WHEN IMPOSING SENTENCE, I WOULD HOPE THAT THE COURT WILL KEEP IN MIND THAT PERHAPS THIS GENTLEMAN'S BEHAVIOR AND ATTITUDE CAN BE CHANGED THROUGH THE PROGRAMS IN A FEDERAL PRISON.

THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT.

MR. DONN, DO YOU HAVE ANYTHING YOU WISH TO SAY?

THE DEFENDANT: YES, SIR, YOUR HONOR, I DO.

THE COURT: ALL RIGHT, IF YOU WILL SPEAK INTO THE MIKE. ALL RIGHT.

THE DEFENDANT: YES, YOUR HONOR, I AM AWARE THE COURT IS NOT SYMPATHETIC ABOUT ANY ACT OF ANY TYPE OF CRIME, BUT LIKE WHEN I GOT OUT OF THE DEPARTMENT OF CORRECTIONS I HAD GOTTEN A JOB WHERE I WAS DIGGING HOLES 9 BY 9 BY 12, YOU KNOW, WITH A PICK AND A SHOVEL. I DID THIS FOR A MONTH AND A HALF UNTIL I WAS LAID OFF.

DURING THAT TIME, FROM THEN ON, I COULDN'T FIND NO TYPE OF JOB. I HAD TEMPORARY WORK WITHIN THE COMMUNITY WORKING AT A PLACE WHICH -- BUT THEN -- WORKING AT A PLACE, BUT THEN THAT RAN OUT AND IT WAS HARD FOR ME TO OBTAIN ANY OF EMPLOYMENT WHATSOEVER.

I FILLED OUT AN APPLICATION, AND THEY ASKED IF I WAS CONVICTED OF A FELONY, AND I TOLD THEM YES, AND THEY COULDN'T USE ME.

I NEVER KNEW WHAT TO DO BECAUSE DURING THE AGE OF 15 -- I SEEN THE STREET ABOUT THREE AND A HALF YEARS, YOU KNOW, SINCE I WAS ABOUT FIFTEEN YEARS OLD, AND THEN SOCIAL AND THINGS LIKE THAT, OR PAYING RENT AND THOSE PROBLEMS, I HAVE NO KNOWLEDGE OF THAT.

THE COURT: WELL, ALL RIGHT. HOW ABOUT THE GOVERNMENT?

MR. O'NEILL: YES, YOUR HONOR.

THE DEFENDANT: YOUR HONOR --

THE COURT: EXCUSE ME. GO AHEAD.

THE DEFENDANT: I NEVER DID ANYTHING LIKE THIS. VIOLENT CRIME IS SOMETHING I NEVER COMMITTED TO HURT SOMEBODY -- MORE THAN TAKE WHAT THEY HAD. WHAT I DID WAS RIP OFF A CAR.

THE COURT: THE GOVERNMENT?

MR. O'NEILL: THE GOVERNMENT RECOMMENDS A SENTENCE OF TEN YEARS IN CUSTODY FOR THIS DEFENDANT. THE MAN HAS SERVED FOUR PRIOR FELONY BURGLARY CONVICTIONS AND ONE POSSESSION OF A DANGEROUS DRUG CONVICTION, ALL FELONIES.

THE MOST SENTENCE HE EVER RECEIVED UNDER ANY OF THOSE IS ONE YEAR IN THE COUNTY JAIL. THE DEFENDANT WAS CHARACTERIZED BY THE PROBATION OFFICER WHO PREPARED THE PRESENTENCE REPORT AS SURLY AND MANIPULATIVE, AND HE HAS BEEN LESS THAN CANDID WITH THE AUTHORITIES. HE TOLD THE FBI, WHEN THEY INTERVIEWED HIM IN CUSTODY, THAT HE WAS DRINKING WHEN HE COMMITTED THE ROBBERY.

HE TOLD THE PROBATION OFFICER THAT IN FACT HE WAS ON PCP IT IS HIS CONDUCT IN THE PAST IN THIS CASE,

HIS DISREGARD FOR THE RIGHTS OF SOCIETY, THE RIGHTS OF OTHERS, AND HIS OBLIGATIONS TO SOCIETY THAT WARRANTS A SEVERE PUNISHMENT IN THE CASE.

WITH THAT IN MIND, THE GOVERNMENT RECOMMENDS TEN YEARS.

THE COURT: DO YOU --

MR. HANDZLIK: IF I MIGHT BE HEARD BRIEFLY.

THE COURT: YES.

MR. HANDZLIK: ON ONE PRIOR OCCASION MR. DONN WAS SENTENCED TO STATE PRISON FOR A PERIOD OF FOUR YEARS, AND ON AN EARLIER OCCASION WAS SENTENCED TO STATE PRISON FOR A PERIOD OF TWO YEARS. HE HAS RECEIVED SUBSTANTIAL SENTENCES FOR WHAT I WOULD CHARACTERIZE AS RATHER MINOR BURGLARIES; THAT IS, IN THE REALM OF THINGS IN TERMS OF THE WAY THEY WERE COMMITTED AND THE AMOUNTS OF MONEY HE WAS SEEKING AT THE TIME.

THE COURT: WELL, I TAKE INTO CONSIDERATION A COUPLE OF THINGS. ONE IS THAT THE CHARGE, AS I RECALL IT, WAS ROBBERY WITHOUT A DANGEROUS WEAPON, BUT I WANT TO BE SURE.

MR. HANDZLIK: THAT IS CORRECT, YOUR HONOR.

THE COURT: THAT IS AS I RECALL IT, AND SO HE DIDN'T HAVE A GUN OR A DANGEROUS WEAPON WITH HIM.

THE SECOND THING IS THAT, WHILE HE STARTED OUT WITH A JURY TRIAL, HE DIDN'T TAKE THE STAND AND EVENTUALLY HE PLED GUILTY; HE DIDN'T PERJURE HIMSELF. I TAKE HIS CHANGE OF PLEA TO GUILTY AS AN INDICATION OF HIS CONTRITION AT HAVING COMMITTED THE OFFENSE. AT LEAST HE RECOGNIZES HE DID WRONG, AND I AM TAKING THAT INTO CONSIDERATION.

ALSO, I WANT TO SEE HIM GET SOME TREATMENTS. HE NEEDS TREATMENT FOR DRUG OR ALCOHOLIC ADDICTION. HE ALSO NEEDS VOCATIONAL OR EDUCATIONAL AND PSYCHIATRIC TREATMENT, AND I HAVE JUST UNDERSTOOD FROM ANOTHER CASE THAT I THINK YOU WERE IN, MR. ASSISTANT UNITED STATES ATTORNEY, MR. ROBERTSON --

THE CLERK: O'NEILL.

MR. O'NEILL: MR. O'NEILL, YOUR HONOR.

THE COURT: -- O'NEILL, YES. WELL, THAT WAS TODAY OR THIS MORNING, I CAN'T REMEMBER, WHERE THE BUREAUCRATS UP IN THE BUREAU OF PRISONS WOULD NOT DO WHAT I WANTED DONE. I WANTED MY SENTENCE MADE CONCURRENT WITH THEIR SENTENCE ON A PROBATION VIOLATION. SO I JUST -- THEY WOULDN'T GIVE A TREATMENT UNLESS THE MAN GOT EIGHT YEARS OR LESS, BUT IF THAT'S THEIR ATTITUDE, THAT'S WHAT I AM GOING TO GIVE.

MR. O'NEILL: YOUR HONOR, WITH THAT IN MIND -- I UNDERSTAND THE COURT'S CONCERN WITH THE PEOPLE IN THE BUREAU OF PRISONS OR THE PAROLE COMMISSION NOT FOLLOWING THE COURT'S ORDER. I THINK THE WAY TO DO THAT WAS TO GET THEM IN HERE AND POSSIBLY ISSUE A CONTEMPT CITATION.

THE COURT: NO.

MR. O'NEILL: THIS MAN HAS VIOLATED THE LAW, AND A SENTENCE SHOULD BE IMPOSED UPON HIM.

THE COURT: IF THEY DON'T LEARN THIS WAY, THEY WON'T LEARN WITH A CONTEMPT CITATION.

MR. O'NEILL: VERY WELL, YOUR HONOR.

THE COURT: IS THERE ANY LEGAL REASON WHY SENTENCE SHOULD NOT BE IMPOSED?

MR. HANDZLIK: NO, YOUR HONOR.

THE COURT: IT IS ORDERED AND ADJUDGED THAT THE DEFENDANT WILL BE COMMITTED TO THE CUSTODY OF THE ATTORNEY GENERAL OR HIS AUTHORIZED REPRESENTATIVE FOR A TERM OF EIGHT YEARS, PROVIDED, HOWEVER, THAT HE SHALL BE ELIGIBLE FOR PAROLE AT ANY TIME THE PAROLE COMMISSION DETERMINES UNDER 18 U.S. CODE 4205(B)(2). SO ORDERED.

MR. HANDZLIK: THANK YOU, YOUR HONOR.

THE DEFENDANT: THANK YOU.

THE COURT: AND I WILL SO RECOMMEND. I JUST HOPE YOU TAKE ADVANTAGE OF THE TIME YOU WILL GET UP THERE. I AM NOT GOING TO RECOMMEND HERE -- YES, PUT IT IN THE JUDGMENT, TOO, MR. CLERK, SO IT IS EMPHASIZED THAT I

URGENTLY RECOMMEND VOCATIONAL AND EDUCATIONAL AND PSYCHIATRIC TREATMENT FOR THIS MAN, AND THAT'S WHY I AM GIVING HIM THE EIGHT YEARS, AND I HOPE THAT THE BUREAU OF PRISONS -- I ORDER THAT THE BUREAU OF PRISONS GIVE HIM THE TREATMENT.

LET'S SEE IF THAT GETS ANYWHERE.

MR. HANDZLIK: THANK YOU, YOUR HONOR.

THE COURT: WE WILL SEE WHAT HAPPENS.

- - -

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

HONORABLE A. ANDREW HAUK, JUDGE PRESIDING

- - -

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. |
| | ) | CR 78-1028-AAH |
| ARON EDWARD DONN, | ) | |
| | ) | |
| DEFENDANT. | ) | |

REPORTER'S CERTIFICATE

I, IRA LEE NEWLANDER, DO HEREBY CERTIFY THAT I REPORTED THE ABOVE PROCEEDINGS ON ~~MONDAY, DECEMBER 17,~~ 1/5/75 ~~1979,~~ AND THAT THE FOREGOING IS A TRUE, ACCURATE AND COMPLETE TRANSCRIPT OF SAID PROCEEDINGS.

LOS ANGELES, CALIFORNIA

IRA LEE NEWLANDER, C.S.R.

